SHELL PETROLEUM CORPORATION ET AL. V.
MARY JANE GRAYS ET AL.

No. 6425. Decided June 23, 1933.
(62 S. W., 2d Series, 113.)

*Hiner & Pannell* and *Allen & Morton,* all of Fort Worth, *Y. P. Broome,* of Tulsa, Okla., *Thompson, Mitchell, Thompson & Young* and *W. K. Koerner,* of St. Louis, Mo., and *P. G. Mc-Elwee,* of Houston, for appellants.

An interlocutory order of the district court appointing a receiver and duly appealed from can be superseded. Carter & Carter (Civ. App.), 40 S. W., 1031; Peoples Cemetery Assn. v. Oakland Cemetery Co. (Civ. App.), 60 S. W., 679; Abilene Ind. Tel. Co. v. S. W. Tel. & Tel. Co. (Civ. App.), 185 S. W., 356; Timpson & H. Ry. Co. v. State (Civ. App.), 222 S. W., 322; Blankenship v. Little Motor Karr Company (Civ. App.), 224 S. W., 210.

It is the duty of the District Court to fix the terms and conditions of the supersedeas bond, and if the District Court fails in its said duty, the Court of Civil Appeals will issue a writ of mandamus directing the District Court to perform its duty. Lawler v. Wray (Civ. App.), 8 S. W. (2d) 524; Houtchens v. Mercer, 119 Texas, 431, 29 S. W. (2d) 1031; McConnell v. Libecap (Civ. App.), 38 S. W. (2d) 408.

The filing of a plea of privilege in due form divests the court of jurisdiction to make any orders other than to transfer the case. Craig v. Pittman & Harrison (Civ. App.), 234 S. W., 1112, (Com. App.), 250 S. W., 667; Golbraith v. Bishop (Com. App.), 287 S. W., 1087; Watson v. Cobb Grain Co. (Com. App.), 292 S. W., 174; Texas-La. P. Co. v. Wells, 121 Texas, 397, 48 S. W. (2d) 978.

This suit is filed in McLennan County, although the land

involved is located in. Gregg County. Appellants have filed pleas of privilege raising the question of venue. These pleas should be sustained unless plaintiffs have both pleaded and proved that the case comes within the provisions of subdivision 13 of Article 1995, Revised Statutes of Texas, 1925. Tidal v. Grays (Civ. App.), 54 S. W. (2d) 1043; Lloyds of America et al. v. Lloyds Southwest Insurance (Civ. App.), 56 S. W. (2d) 477; Lasater v. Waits, 95 Texas, 553, 68 S. W., 500.

*Carlton J. Smith* and *Tom P. Scott,* both of Waco, for appellees.

Appellees (plaintiffs below) having filed a partition suit in McLennan County, Texas, where a number of defendants reside, and the evidence on the trial of the cause having shown that plaintiffs own an interest in the property as co-tenants with defendants, and there having been no evidence to contradict such rights of plaintiffs, it is shown conclusively that such suit is a partition suit and not a trespass to try title suit and venue is therefore properly laid in McLennan County, the county in which the suit was instituted. R. S., 1925, art. 1995, subsection 13; Lanier v. Looney (Civ. App.), 2 S. W. (2d) 347; Consolidated Pet. Co. v. Austin (Civ. App.), 283 S. W., 879.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This case is before us on certified questions from the Court of Civil Appeals at Waco. A reading of the certificate in conjunction with the record accompanying it discloses that originally Mary Jane Grays and Josie Nichols. filed this suit in the District Court of McLennan County, Texas, to recover an alleged 3/98 interest in 140 acres of land in Gregg County, Texas, for an accounting for oil removed from such land, for partitions, and for a receiver. The dominant purposes of the suit are to recover the title and possession of land, and to recover for oil removed therefrom, as we will later demonstrate.

The two above named plaintiffs reside in McLennan County, Texas. There are a great number of defendants. Only two of such defendants, Alice Hays Jefferson and Arma Lee Greer reside in McLennan County. It is alleged that the plaintiff, Mary Jane Grays, owns an undivided 1/98 interest in this land and that the plaintiff, Josie Nichols, and the defendant, Alice Hays Jefferson, each own an undivided 1/49 interest. It is alleged that the defendant, Arma Lee Greer, is claiming some right, title or interest in the land, the exact nature of which

494

is unknown to the plaintiff, but that such claim is inferior to the claims and titles of the plaintiffs. The interest of the defendant, Alice Hays Jefferson, is identical with plaintiffs and as shown by the facts, the defendant, Greer, has no interest in the land at all.

It appears that the Shell Petroleum Corporation, and Tidal Oil Company, both corporations, and neither of whom reside in Gregg County, Texas, or in McLennan County, Texas, filed their respective pleas of venue or privilege, to be sued in Gregg County, Texas, the county in which the land is located. Controverting affidavits were filed by the plaintiffs, and subject to the pleas of privilege or venue the two oil companies filed general exceptions and general denials to the application for the appointment of a receiver.

There was a hearing on the pleas of venue or privilege of the two oil companies to be sued in Gregg County, Texas, where the land is located, and without passing on such pleas, but subject thereto, and with the express understanding that no rights would be waived by doing so, the district court took up the matter of the application for the appointment of a receiver. Several days later the district court entered an order overruling the pleas of venue or privilege, and then proceeded to enter an order appointing a receiver for the entire tract of land, surface and minerals, with authority generally to operate the same as an oil producing property.

The two above-named oil companies prosecuted separate appeals to the Court of Civil Appeals at Waco, both from the order overruling the pleas of venue. or privilege, and the order appointing the receiver. The two appeals were consolidated in the Court of Civil Appeals, and this certificate is in the consolidated appeal. We do not reproduce the certificate; it is sufficient to say that it certifies questions which call for a decision of the law questions we shall decide.

At the threshold of this case we are met with a motion filed by appellees to dismiss this certificate insofar as it pertains to the appeals of the two oil company defendants from the order of the district court overruling their pleas of privilege or venue to be sued in Gregg County, Texas. As ground for such motion appellees assert that the statutes of this State make no provision for appeals from interlocutory orders overruling mere pleas of venue. In other words it is asserted by the motion to dismiss that it is only where the appeal is from an interlocutory order overruling a personal plea of privilege "to be sued in the county of one's residence" that an appeal is pro-

vided for. In connection with the above appellees assert that a mere plea of venue to be sued in one of the counties allowed by the several exceptions to the general rule provided by Article 1995, R. C. S., 1925, or other statutes, is still a plea in abatement. In support of such contention appellees cite the case of Prothro v. Smith (Civ. App.), 57 S. W. (2d) 921. This authority undoubtedly sustains appellees' position.

■ We overrule the motion to dismiss because we are not in accord with the holding in the case above cited. In this connection we do not express an opinion as to whether we would sustain such motion if we did agree with the holding in the Prothro case, supra. A decision of that matter would involve certain jurisdictional questions which we do not here pass on.

We disagree with the holding in Prothro v. Smith, supra, because we think that when the pertinent statutes are properly construed as a whole they are intended to cover all pleas of privilege or venue to be sued in a county where venue is provided by the various provisions of Article 1995 and Article 2390, R. C. S., or any other county of venue provided by law.

Before further discussing the pertinent statutes directly involved in this question we deem it expedient to quote the same. They are Articles 2007, 2008, 2019 and 2020, R. C. S., 1925. Such statutes are as follows:

Art. 2007. "A plea of privilege to be sued in the county of one's residence shall be sufficient if it be in writing and sworn to, and shall state that the party claiming such privilege was not, at the institution of such suit, nor at the time of the service of process thereon, nor at the time of filing such plea, a resident of the county in which such suit was instituted and shall state the county of his residence at the time of such plea, and that 'no exception to exclusive venue in the county of one's residence provided by law exists in said cause'; and such plea of privilege when filed shall be prima facie proof of the defendant's right to change of venue. If the plaintiff desires to controvert the plea of privilege, he shall within five days after appearance day file a controverting plea under oath, setting out specifically the fact or facts relied upon to confer venue of such cause on the court where the cause is pending."

Art. 2008. "Upon the filing of such controverting plea, the judge or justice of the peace shall note on same a time for a hearing on the plea of privilege. Such hearing, unless the parties agree upon the date, shall not be had until a copy of such controverting plea, including a copy of such notation thereon, shall have been served on each defendant, or his attorney, for

at least ten days exclusive of the day of service and the date of hearing, after which the court shall promptly hear such plea of privilege and enter judgment thereon. Either party may appeal from the judgment sustaining or overruling the plea of privilege, and if the judgment is one sustaining the plea of privilege and an appeal is taken, such appeal shall suspend the transfer of the venue and a trial of the cause pending the final determination of such appeal."

Art. 2019. "If a plea of privilege is sustained, the cause shall not be dismissed, but the court shall transfer said cause to the court having jurisdiction of the person of the defendant therein; and the costs incurred prior to the time such suit is filed in the court to which said cause is transferred shall be taxed against the plaintiff."

Art. 2020. "When a plea of privilege is sustained, the court shall order the venue to be changed to the proper court of the county having jurisdiction of the parties and the cause. The clerk shall make up a transcript of all the orders made in said cause, certifying thereto officially under the seal of the court, and send it with the original papers in the cause to the clerk of the court to which the venue has been changed."

Prior to 1907, when the first Act relating to pleas of privilege or venue was enacted by the Legislature such pleas were very cumbersome and complicated affairs. Among other things, the rule then in force required the plea to negative expressly, in so many words, all exceptions provided by the various venue statutes. Also prior to 1907, a plea of privilege or venue was purely a plea in abatement, and when sustained there was no authority for removal to the proper court in a county of statutory venue, but the cause was completely dismissed, and the plaintiff was compelled to institute a new suit in the proper county. As a result of this condition it often happened that after months and even years of litigation cases would be dismissed for lack of venue in the county where they were instituted. In this connection it also often happened that the cause when dismissed was barred by limitation. It was these evils that the Legislature undoubtedly sought to correct by the 1907 plea of privilege Act.

When we examine the 1907 Act which is Chapter CXXXIII, page 248, General Laws 30th Legislature, we find that by its terms it certainly covered all pleas of venue, and was not restricted to mere pleas of personal privilege to be sued in the county of one's residence. In this connection it is true that Article 1194a of the 1907 Act did begin with the words, "A

plea of privilege to be sued in the county of one's residence," etc., but when the entire Act is looked to it is evident that it was intended to cover all venue pleas. In this connection we call attention to the fact that the very article just mentioned expressly provided that the plea should state that none of the exceptions to exclusive venue in the county of one's residence mentioned in Article 1194 or Article 1585, R. C. S., the then venue statutes, existed in such cause. Also Article 1194c of the 1907 Act by its express terms made the Act cover, "A plea of privilege to the venue to be sued in some other county than the county in which the suit is pending," thus demonstrating the fact that the Act was not restricted in its application to mere personal pleas of privilege to be sued in the county of one's residence, as would appear if we looked alone to the opening words of the first article. Finally when we come to examine the emergency clause of the 1907 Act, which we have a right to look to to ascertain the legislative intent, we find that such clause expressly provided, "whereas the fact that the laws of this State now provide no means of changing the venue in a case where a plea of abatement or privilege to be sued in o county *different from that in which the suit is pending,"* etc. This conclusively shows that the 1907 Act was intended to cover all pleas of abatement or privilege, and not merely pleas of personal privilege to be sued in the county of one's residence.

So far as we have been able to ascertain, the subject matter of the 1907 Act above discussed was carried into our 1911 Civil Codification as Articles 1832, 1833, and 1903.

An examination of Article 1903, supra, shows that, like the original Act of 1907, it begins with the words, "A plea of privilege to be sued in the county of one's residence," but further along in the same article it is provided that the plea shall state, "and that none of the exceptions to exclusive venue in the county of one's residence mentioned in Article 1830 or Article 2308 of the Revised Statutes exist in said cause." Also when we come to examine Articles 1832 and 1833 of the 1911 codification we find that taken together they expressly cover pleas of privilege and pleas of mere venue. In this connection we quote the following from Article 1833: "Whenever a plea of privilege to the venue, to be sued in some other county than the county in which the suit is pending, shall be sustained, the court shall order the venue to be changed to the proper court having jurisdiction of the parties and the cause," etc. This statute which must be looked to in interpreting Article 1903, supra, demonstrates that the statutes of 1911 were intended to

cover "a plea of privilege or venue to be sued in some county other than the county in which the suit is pending" and was not restricted to pure pleas of personal privilege to be sued in the county of one's residence as would appear if only the opening words of Article 1903, supra, were looked to.

It appears that by Act approved April 2nd, 1917, of the 35th Legislature, page 388, Article 1903, of the 1911 codification was amended but Articles 1832 and 1833 were left intact. Nothing is contained in the 1917 Amendment which would change the effect of the statutes, taken as a whole, in the respect under discussion.

From the discussion indulged in it is evident that we hold that up to the 1925 codification our statutes relating to pleas of privilege and venue, and the procedure thereunder, covered all pleas of venue, and were not confined to mere pleas of personal privilege to be sued in the county of one's residence.

■ Now in the light of the foregoing discussion, and especially in the light of the evils which the statutes prior to the 1925 codification sought to correct, and did correct, let us examine the several articles above quoted of the 1925 codification.

In the beginning of this part of the discussion we call attention to the fact that if we hold that the statutes of the 1925 codification do not provide for appeals from interlocutory orders overruling pleas of mere venue, and that they provide for such appeals only in instances of the overruling of pleas of personal privilege to be sued in the county of one's residence, then we must hold that the very wise and salutary laws as they existed prior to the 1925 codification have been in such respect repealed, and we are back under the old rule which requires a dismissal of the suit where a plea of venue not involving personal privilege to be sued in the county of one's residence is sustained. We should not give the 1925 codification such a disastrous interpretation or construction if it is susceptible of any other reasonable one.

When we come to examine Article 2007, of the 1925 codification, we find that like all its predecessors it begins with the words, "A plea of privilege to be sued in the county of one's residence," and also provides that the plea shall state the county of defendant's residence, still it also requires that the plea shall state that, "no exception to exclusive venue in the county of one's residence provided by law exists in said cause." When we come to examine Articles 2019 and 2020 of the 1925 codification, which relate to the same subject matter as Articles 2007 and 2008, we find that while Article 2019 provides that when a

plea of privilege is sustained the cause shall not be dismissed but shall be transferred to the court having jurisdiction of the person of the defendant, still Article 2020 provides that the court shall order the venue changed to the proper court of the county having jurisdiction of the parties and the cause. We think this article can be construed to mean that the court ordering the change of venue is not confined to changing it to a county where a defendant resides, but can change it to any county having venue and jurisdiction of the parties and the cause.

Finally, as above stated, when it is realized that any other construction of the several statutes of the 1925 codification brings back into existence many of the evils corrected up to such codification, we do not think such construction should be indulged if it can reasonably be avoided.

■ From the above it is evident that we hold that the above quoted statutes of the 1925 codification authorize an appeal from interlocutory orders of trial courts overruling pleas of mere venue.

■ We shall now proceed to a discussion of the matters directly involved in the certificate. In this connection we shall first determine the question certified involving the right to supersede the order appointing a receiver.

A correct determination of such questions must turn on a proper construction of Articles 2250, 2270 and 2275, R. C. S. of Texas, 1925. These articles are as follows:

Art. 2250. "An appeal shall lie from an interlocutory order of the district court if such appeal be taken within twenty days from the entry of such order in the following cases and shall take precedence in the appellate court, but the proceedings in the court below shall not be stayed during the pendency of the appeal, unless otherwise ordered by the appellate court:

"1. Appointing a receiver or trustee in any cause.

"2. Overruling a motion to vacate an order appointing a receiver or trustee in any case."

Art. 2270. "An appellant or plaintiff in error, desiring to suspend the execution of the judgment may do so by giving a good and sufficient bond to be approved by the clerk, payable to appellees or defendant in error, in a sum at least double the amount of the judgment, interest and costs, conditioned that such appellant or plaintiff in error shall prosecute his appeal or writ of error with effect; and in case the judgment of the Supreme Court or the Court of Civil Appeals shall be against

him, he shall perform its judgment, sentence or decree, and pay all such damages as said court may award against him."

Art. 2275. "Upon the filing of a proper supersedeas bond, the appeal or writ of error shall be held to be perfected, and the execution of the judgment shall be stayed, and should execution have been issued thereon, the clerk shall forthwith issue a supersedeas."

It is evident from a reading of the above statutes that Article 2250 gives the right of appeal from an interlocutory order appointing a receiver, but this article does not grant the right of a supersedeas pending such appeal. The right to supersede judgments and orders is conferred by Articles 2270 and 2275, supra. When we consider the two articles last mentioned it is evident that they grant the right to supersede interlocutory as well as final judgments. There is therefore no escape from the conclusion that an order appointing a receiver may be superseded on appeal unless there is some other statutes than Articles 2270 and 2275 which take away such right. It is contended by appellees that Article 2250, supra, has effect to take away the right to supersede an order appointing a receiver. We disagree with such contention.

Prior to the codification of 1925, the subject matter of Article 2250, supra, was contained in two statutes. These statutes were Article 2079, R. C. S., 1911, and Acts 35th Legislature, Chap. 168, p. 379, sec. 1, carried as Article 2079a, 1918 Supplement to Vernon's Civil Statutes. The two prior statutes were as follows:

Art. 2079. "An appeal shall lie from an interlocutory order of the district court appointing a receiver or trustee in any cause; provided such appeal be taken within twenty days from the entry of such order. An appeal under such cases shall take precedence in the appellate court, but the proceedings in other respects in the court below shall not be stayed during the pendency of the appeal, unless otherwise ordered by the Appellate Court."

Art. 2079a. "An appeal shall lie from an interlocutory order of the district court overruling a motion to vacate an order appointing a receiver or trustee in any case, provided such appeal be taken within twenty days from the entry of such order appealed from. An appeal in such cases shall take precedence in the appellate court; but the proceedings in other respects in the court below shall not be stayed during the pendency of the appeal, unless otherwise ordered by the appellate court."

It is settled that under the law as it existed prior to the 1925 codification, that is, under Article 2079, supra, the party appealing from an order appointing a receiver, had the right to stay the same pending such appeal by filing a supersedeas bond in the district court. Carter v. Carter (Civ. App.), 40 S. W., 1030; People's Cemetery Assn. v. Oakland Cemetery Co., 24 Texas Civ. App., 668, 60 S. W., 679; Timpson & H. Ry. Co. v. State (Civ. App.), 222 S. W., 322; Baptist Miss. & Ed. Con. of Texas v. Knox, 19 S. W. (2d) 456; Blankenship v. Little Karr Co. (Civ. pp.), 224 S. W., 210; Hardy Oil Co. v. Burnham, 58 Texas Civ. App., 285, 124 S. W., 221.

It appears to have been held prior to the 1925 codification that under Article 2079, supra, the right of supersedeas did not exist when the appeal was from an order overruling a motion to vacate the appointment of a receiver. Blankenship v. Little Karr Co. (Civ. App.), 224 S. W., 210; Baptist Miss. & Ed. Con. of Texas v. Knox (Civ. App.), 19 S. W. (2d) 456.

The reason for the difference in the rule regarding the two appeals above mentioned is quite evident. Where the appeal is from an order appointing a receiver the very order of appointment is removed to the appellate court, but where the appeal is from an order overruling a motion to vacate an order appointing a receiver only the order overruling the motion to vacate is removed to the appellate court. The order of appointment remains unappealed from. Stated in another way the purpose of a supersedeas bond is to preserve the status quo by staying the execution or enforcement of the judgment or order appealed from pending the appeal. Where an appeal is from an order appointing the receiver the party appealing accomplishes something by filing a supersedeas bond; that is he preserves the status quo by preventing the receivership pending the appeal. On the other hand when an order has already been entered appointing a receiver, and the party opposing such receivership presents a motion to vacate such appointment, and such motion is overruled, and the appeal taken from the order so refusing to vacate, the filing of a supersedeas bond to preserve the status quo would accomplish nothing, because the status quo would leave the receivership in force.

When we come to examine and construe Article 2250, supra, we find nothing therein which ought to be construed as changing the rule of supersedeas as it existed under prior Articles 2079 and 2079a, supra. In other words, Article 2250 is merely a codification and combination into one statute of the subject matters of the two prior statutes.

In connection with the above it will be noted that Articles 2079 and 2079a each contained the following provision:

"\* \* \* but the proceedings *in other respects* in the court below shall not be stayed during the pendency of the appeal unless otherwise ordered by the appellate court." (Italics ours).

Article 2250, supra, contains the following provision:

"\* \* \* but the proceedings in the court below shall not be stayed during the pendency of the appeal, unless otherwise ordered by the appellate court."

It will be noted that the language in the above quoted matter is exactly the same in present Article 2250 that it was in old Articles 2079 and 2079a, except the phrase *"in other respects"* is omitted from present Article 2250.

It seems to be contended by appellees that the ommission of the above quoted phrase, *"in other respects,"* from Article 2250 evidences an intention on the part of the Legislature to deny the right of supersedeas in all appeals thereunder. We think such contention should be overruled. The meaning of both statutes is that an appeal from an order appointing a receiver, or overruling a motion to vacate a receivership shall not stay the trial of the case or other proper proceedings pertaining thereto not involved in the appeal unless otherwise ordered by the appellate court. The codifiers evidently left out the clause *"in other respects,"* because it was surplusage.

█ It is the settled law of this State that where an appellant is entitled to supersede a judgment pending appeal and the judgment is not for a specific amount the appellant has the right to have the trial court fix the amount of the supersedeas bond in a reasonable amount. Houchens v. Mercer, 119 Texas, 431, 29 S. W. (2d) 1031 (Com. App. opinion adopted), and authorities there cited.

We now come to discuss the questions involving the issue of venue.

The land in controversy here was formerly owned by Jones Moore and his wife, both negroes, now deceased. These deceased parties are the common source of title of all parties.

Jones Moore and wife had seven children, one of whom was Ezelia Moore. Ezelia Moore lived for a time with a man by the name of George Nichols. Plaintiffs contend that Ezelia Moore and George Nichols contracted a common law marriage, and that they had three children, the product of such marriage. All three of these children died when very small. Ezelia Moore is also now dead, but was survived by one of the above three children named Gladys. When Ezelia Moore died her one-

seventh interest in this land passed to her said daughter regardless of whether or not Ezelia Moore was married to George Nichols. After the death of Ezelia Moore, her daughter, Gladys, also died. It will thus be seen that if Ezelia Moore was not married to George Nichols then Gladys was her illegitimate child, and the interest in this land which she heired from her mother, Ezelia Moore, passed on her death to the heirs of her mother, who are her uncles and aunts, from whom these two appellant oil companies hold oil leases. On the other hand, if Ezelia Moore and George Nichols were married then Gladys was a legitimate child, and at her death one-half of her one-seventh interest passed to her father, George Nichols. George Nichols is also dead. Plaintiffs and defendant, Alice Hays Jefferson, claim to be the heirs at law of George Nichols and assert title as such. The claim of these plaintiffs and such defendant is therefore based on the alleged common law marriage between Ezelia Moore and George Nichols, both now dead.

The evidence tends to show that Preston Moore et al., who are the heirs at law of Jones Moore and wife, deceased, as well as all the heirs of the child, Gladys, deceased, if there was no common law marriage between Ezelia Moore and George Nichols, are in possession of the property and have been for many years. In this connection the evidence raises an issue of adverse possession. The evidence further tends to show that the defendants, Boston Moore et al., and the two oil companies do not recognize that there was ever any common law marriage between Ezelia Moore and George Nichols, and do not recognize that either of the plaintiffs or either of the McLennan County defendants, Alice Hays Jefferson or Arma Lee Greer, have any interest or title in this land.

The record also shows that Shell Petroleum Corporation and Tidal Oil Company hold oil and gas leases on the above land executed by all of the owners thereof except the parties to this suit, plaintiffs and defendants, who reside in McLennan County, Texas. In this connection it seems that all of the alleged owners of this land were not parties in the trial court, but that is immaterial to this appeal under the view we take of the case.

It appears from the record that the land is very valuable oil producing property and that the two oil company defendants have taken large quantities of oil therefrom, and will continue to operate the same under their leases.

It further appears from the petition in the trial court and the evidence, that Alice Hays Jefferson, one of the defendants who resides in McLennan County, is an heir of George Nichols,

deceased, and her interest in this suit is identical with the plaintiffs. This last named defendant is alleged to own an undivided 1/49 interest. She is represented by the same attorneys who represent the plaintiffs. There is nothing wrong in this because the interests are the same.

The petition does not allege the interest of the defendant, Arma Lee Greer, the other McLennan County defendant, but simply alleges as above shown, that such party is claiming some right, title and interest in the property, the exact nature of which is unknown to the plaintiffs. We think the evidence taken on the hearing on the pleas of privilege and for a receiver conclusively shows that Greer has absolutely no interest in this litigation or its subject matter, and that he is claiming no interest or title in this land. It thus appears that the only defendant in this suit, who has an asserted interest really to be tried is in the same shoes with the plaintiffs.

Plaintiffs contend that they have venue to try this case in McLennan County, Texas, under Subdivision 13 of Article 1995, R. C. S., 1925. In this connection plaintiffs contend that this is a partition suit within the meaning of said subdivision.

The two appellant oil companies who filed pleas of privilege or venue to be sued in Gregg County, Texas, where this land is located, contend that the venue of this case is governed by Subdivision 14 of Article 1995, supra, because this is a suit to recover land, for damages thereto, and to stay waste.

The above mentioned statutes read as follows:

At. 1995. "No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases:

\* \* \* \*

"13. Partition.—Suits for the partition of land or other property may be brought in the county where such land or other property, or a part thereof, may be, or in the county in which one or more of the defendants reside, or in the county of the residence of any defendant who may assert an adverse claim to or interest in such property, or seeks to recover the title to the same. Nothing herein shall be construed to fix venue of a suit to recover the title to land."

"14. Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands must be brought in the county in which the land, or a part thereof, may lie."

Prior to 1919 the subject matter of Subdivision 13 of pres-

ent Article 1995, supra, was contained in Subdivision 13 of Article 1830, R. C. S., 1911. As contained in the 1911 codification such Subdivision 13 was as follows:

"(13) Suits for Partition.—Suits for the partition of lands or other property may be brought in the county where such lands or other property, or a part thereof, may be, or in the county in which one or more of the defendants reside."

In 1919 Subdivision 13 as contained in Article 1830 of the 1911 codification was amended. We are not particularly interested in that amendment.

When we come to examine the present statute as contained in Subdivision 13 of the 1925 codification we find that it is not exactly like the statute of the 1911 codification, nor the amendment of 1919. In this connection it will be noted that present Subdivision 13 contains substantially the same subject matter as Subdivision 13 of Article 1830 of the 1911 codification, except the present statute contains the added provision, *"or in the county of the residence of any defendant who may assert an adverse claim to an interest in such property, or seeks to recover the title to the same. Nothing herein shall be construed to fix venue of the suit to recover title to land."* (Italics ours).

A reading of Section 13 of Article 1995, supra, will demonstrate that it cannot operate to fix venue in McLennan County for the instant action. In this connection it is clear that under the statute as contained in the 1911 codification the venue in this suit would be in Gregg County, Texas. This being true, authority for a change in the rule must be found in the portion of Subdivision 13 in the present Article 1995, just above quoted. We think this provision can give no comfort to the plaintiffs in the present action.

As already noted the pleadings of the plaintiff, together with the evidence here on the trial on the pleas of privilege or venue, and for receiver, conclusively show that this land is not located in McLennan County; that but two of the named defendants reside in such county; that one of such McLennan County defendants, Alice Hays Jefferson, has interest identical with plaintiffs and not adverse to them; that the other McLennan County defendant, Arma Lee Greer, has no real interest in the property; and that all of the other defendants are in actual adverse possession of this land and are disputing the title of the plaintiffs, and of the two McLennan County defendants. Also an examination of the plaintiffs' pleadings will disclose

506

that they are seeking an accounting and a recovery for large quantities of oil already removed from this land.

■ Under the above record we think that this is a suit to recover land, and for damages to land within the meaning of Subdivision 14 of Article 1995, supra, and within the meaning of the last clause of Subdivision 13 of Article 1995, supra, viz: "Nothing herein shall be construed to fix venue of a suit to recover the title to land." We think further that neither the residence of Alice Hays Jefferson, nor the residence of Arma Lee Greer in McLennan County can aid plaintiffs in this suit as to venue in McLennan County. In this connection it is evident that Arma Lee Greer has no interest whatever and is asserting none. As to Alice Hays Jefferson her interests are identical with the plaintiffs, and not adverse, and the express language of present Subdivision 13 only operates to fix venue in partition suit where the suit is filed in a county in which a defendant lives who has a claim adverse to the plaintiffs. We have no such defendant in McLennan County in the present suit.

From our discussion it is evident that we hold that the venue of this suit lies in Gregg County, Texas. Also since the trial court should have sustained the pleas of privilege he erred in appointing a receiver.

We recommend that this opinion be certified as answering all pertinent questions certified.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

C. M. CURETON, Chief Justice.