# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00136-CV

**Texas Health and Human Services Commission; and Cecile Erwin Young, Executive Commissioner of the Texas Health and Human Services Commission, Appellants**

**v.**

**Sacred Oak Medical Center LLC, Appellee**

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-000074, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O R D E R

**PER CURIAM**

Appellants, Texas Health and Human Services Commission and its Commissioner ("Commission" or "State appellants"), have appealed the trial court's March 22, 2021 order granting appellee Sacred Oak Medial Center LLC's application for temporary injunction and denying the Commission's plea to the jurisdiction. The underlying case arises from an order issued by the Commission on December 21, 2020 ("December 2020 Order"), denying Sacred Oak's renewal application for the license for its psychiatric hospital and requiring it to cease operations immediately. The trial court granted Sacred Oak's application for a temporary injunction, issuing an order restraining the Commission from enforcing the December 2020 Order and requiring the Commission to "immediately take all actions within its jurisdiction that are necessary to restore Sacred Oak to the operational status quo that existed prior to [the

Commission's] enforcement of the Order, which shall include reinstating and returning any state license or certification from [the Commission] held and/or possessed by Sacred Oak on December 20, 2020," which would allow Sacred Oak to reopen its psychiatric hospital.

Because the State appellants are a state agency and the head of a state agency, upon the filing of the notice of appeal, the trial court's order was superseded by operation of law, and the Commission asserted in the notice of appeal that it was not subject to being counter-superseded under Texas Rule of Appellate Procedure 24.2(a)(3). *See* Tex. Civ. Prac. & Rem. Code § 6.001(a); *see also* Tex. R. App. P. 24.2(a)(3) ("When the judgment is for something other than money or an interest in property, . . . . [and] [w]hen the judgment debtor is the state, a department of this state, or the head of a department of this state, the trial court must permit a judgment to be superseded except in a matter arising from a contested case in an administrative enforcement action."). Sacred Oak filed a motion requesting that the trial court "refuse to suspend enforcement of the judgment," arguing that the trial court was not required to allow the Commission to supersede the temporary injunction because this matter arises from a contested case in an administrative enforcement action and thus the trial court has discretion to allow it to post a counter-supersedeas bond. *See* Tex. R. App. P. 24.2(a)(3). In response, the Commission argued that the trial court should decline to hear the motion because the Commission's accelerated interlocutory appeal was taken from the trial court's denial of its plea to the jurisdiction, and thus the appeal had stayed all other proceedings in the trial court. *See* Tex. Civ. Prac. & Rem. Code § 51.014(b); *see also In re Texas Educ. Agency*, 441 S.W.3d 747, 751 (Tex. App.—Austin 2014, orig. proceeding) (holding that trial court abused its discretion by issuing orders denying agency's right to supersedeas after Section 51.014(b) automatically stayed "all other proceedings in the trial court"). The trial court subsequently issued a letter ruling in which

2

it found that *In re Texas Education Agency* "is binding precedent on this court" and that "[t]here is no indication that it has been overruled or revisited by the Third Court of Appeals or Texas Supreme Court." Therefore, the trial court stated that the hearing set on Sacred Oak's Motion to Refuse Suspension of Judgment would not go forward because "the trial court lacks the discretion to hear the matter under binding Third Court precedent."

Sacred Oak subsequently filed in this Court an "Emergency Motion for Review of Denial of Counter-Supersedeas or for a Rule 29.3 Temporary Order," which the Commission opposes. For the reasons discussed below, we grant the alternative relief requested by Sacred Oak, and pursuant to our authority under Texas Rule of Appellate Procedure, we order that the trial court's March 22, 2021 temporary injunction is reinstated and remains in effect, pending disposition of the appeal.

## BACKGROUND

The parties had previously entered into an Agreed Order on October 1, 2019, after Sacred Oak had applied to renew its license on May 1, 2019, and the Commission had issued April 18, 2019 and June 5, 2019 Notices of Violations and a proposed administrative penalty. The Agreed Order resolved two Notices of Violation by probating the denial of Sacred Oak's renewal application for a period of twelve months, subject to Sacred Oak's compliance with the terms of the Agreed Order, which among other things, required Sacred Oak's facility to hire an outside consultant approved by the Commission to create a corrective action plan identifying specific actions to be taken "to achieve sustained compliance with all applicable statutes and regulations" and to provide the Commission with monthly reports detailing Sacred Oak's progress in implementing the specific actions identified in the plan and confirming whether

3

Sacred Oak was sustaining compliance with all applicable statutes and regulations. The Agreed Order allowed the Commission to deny the license renewal at any time during the probation period if it found Sacred Oak had not made sufficient progress in implementing the plan and achieving sustained compliance. The Agreed Order further provided that upon completion of the corrective action plan, Sacred Oak was to request a survey by the Commission, and if the Commission did not find that Sacred Oak had "achieved sustained compliance with all applicable statutes and regulations by the end of the Probation Period, the Commission may deny the license renewal." After conducting the required post-probation survey, the Commission identified deficient practices that it cited in the December 2020 Order in support of its finding that Sacred Oak did not achieve sustained compliance with all applicable statutes and regulations, which was the basis for its denial of Sacred Oak's renewal application.

On January 7, 2021, Sacred Oak sued the Commission, arguing that the Commission's December 2020 Order failed to find that it did not comply with applicable statutes and regulations that were the subject of the Notices that led to the Agreed Order. *See* Tex. Health & Safety Code § 577.016(f) (establishing that facility in repeated noncompliance may be scheduled for probation and "[d]uring the probation period, the hospital or facility must correct the items that were in noncompliance and report the corrections to the department for approval"). In its petition, Sacred Oak contends that to the extent the Commission alleged the occurrence of different violations during the probation period as the basis for denying its renewal application, Sacred Oak is entitled to a hearing and an opportunity to demonstrate or achieve compliance before the Commission could deny its renewal application and order it to close. *Id.* § 577.016(b). Sacred Oak seeks judicial review of the December 2020 Order, asserting that although it submitted a request for a hearing on the order, the Commission had advised it that the request

4

would be refused because the Commission's decision is final.[1]  *Id.* § 577.018.  Sacred Oak also seeks a declaratory judgment that the denial of its license renewal and closure of its hospital are void as ultra vires acts that violate the Texas Health and Safety Code and Texas Administrative Code.  Finally, it seeks injunctive relief requiring the Commission to withdraw its December 2020 Order, pending the administrative processes established by Texas Administrative Code Title 26, Section 510.83 and Texas Health and Safety Code Section 577.016.

On February 1, 2021, the trial court conducted a hearing on the Commission's plea to the jurisdiction and Sacred Oak's application for temporary injunction.  At the hearing, the Commission informed the court that although Sacred Oak's application to the Commission for an appeal of the December 2020 Order had been docketed with its appellate division, the Commission intended to argue that Sacred Oak is not entitled to an administrative appeal, based on the waiver clause in the Agreed Order.

On March 22, 2021, the trial court issued its order denying the plea to the jurisdiction, granting Sacred Oak's application for temporary injunction, and granting the Commission's motion to quash subpoenas for certain witnesses to appear at the temporary-injunction hearing.  In its order, the trial court made the following findings to support its grant of the temporary injunction:

---

[1]  The parties dispute the construction of certain clauses in the Agreed Order, including a clause in which Sacred Oak "waives the right to a hearing or an appeal regarding the Commission findings, assessment of the proposed administrative penalty and disposition of this case through the Commission's issuance of an Order," and another clause stating that "[t]he Commission does not waive the right to enforce this Order or to prosecute any other violations that Respondent may hereafter commit. The Commission shall consider this Order and Respondent's compliance history in the processing of any other enforcement actions and the imposition of any subsequent penalty."

Finding that Sacred Oak has demonstrated the likelihood of success on the merits at trial, including that the December 21, 2020 Order . . . may violate Texas Administrative Code §510.83 by purporting to deny Sacred Oak's application for renewal of its hospital license without providing prior notice of same, prior opportunity to demonstrate or achieve compliance, and prior opportunity for a hearing; and

Finding that irreparable harm and economic injury will be sustained by Sacred Oak by the continued closure of the hospital and consequent disruption of its business with the enforcement of the [December] Order . . . .

As a result, the trial court ordered that:

[the Commission] is RESTRAINED from enforcing the [December] Order and that [the Commission] shall immediately take all actions within its jurisdiction that are necessary to restore Sacred Oak to the operational status quo that existed prior to [the Commission's] enforcement of the Order, which shall include reinstating and returning any state license or certification from [the Commission] held and/or possessed by Sacred Oak on December 20, 2020, and thereafter terminated and/or removed as a result of [the Commission's] efforts to enforce the Order (the "Licenses", *e.g.*, Psychiatric Hospital License No. 100390, issued to Sacred Oak on May 26, 2017). In the event that a document evidencing any such License was physically destroyed on or after December 21, 2020, [the Commission] shall immediately issue or cause to be issued a new such document to Sacred Oak. [The Commission] is further directed to immediately update its electronic records to reflect that the Licenses are valid and existing, that Sacred Oak's credentials reflect the status quo that existed on December 20, 2020, and that Sacred Oak can practice/operate in the State of Texas as it was authorized to do so on December 20, 2020[.]

The trial court further ordered that the case is abated pending the outcome of the administrative hearing docketed at the Commission and exhaustion of administrative remedies, but that "[s]uch abatement does not affect and will not restrict the Court's enforcement of this order and the temporary injunction enjoining [the Commission's] termination of the license, which shall in any event remain in place pending a final hearing in this proceeding[.]" The trial court set a final hearing in the matter for October 11, 2021.

6

The Commission immediately filed its notice of appeal, and as described above, after the trial court determined that it lacked discretion to hear Sacred Oak's motion to counter-supersede the judgment, Sacred Oak filed its Emergency Motion for Review of Denial of Counter-Supersedeas or for a Rule 29.3 Temporary Order in this Court.

**ANALYSIS**

In its emergency motion, Sacred Oak argues that the trial court erred in concluding that the Section 51.014(b) stay applied to its counter-supersedeas motion and that it should have allowed Sacred Oak to counter-supersede the order. Accordingly, Sacred Oak requests that this Court review the trial court's ruling pursuant to Texas Rule of Appellate Procedure 24.4(a), and upon review, that we reverse the trial court's ruling that it could not hear the counter-supersedeas motion and order that the temporary injunction will remain in effect upon Sacred Oak's posting of security in the amount of $10 (the same amount set by the trial court in the temporary injunction). It also requests that we issue a temporary order under Rule 24.4(c) that the temporary injunction remain in effect, pending our consideration of this motion. In the alternative, Sacred Oak requests that the Court issue a temporary order under Rule 29.3 that the temporary injunction remains in effect pending the disposition of this appeal, in order to preserve the rights of the parties.

In response, the Commission argues that (1) the trial court properly decided that it had no discretion to consider the counter-supersedeas motion, based on this Court's 2014 opinion in *In re Texas Education Agency*, 441 S.W.3d at 751, and on the supreme court's more recent holding in *In re Geomet Recycling LLC*, 578 S.W.3d 82, 91-92 (Tex. 2019), which affirms the stay imposed by Section 51.014(b) in the TCPA context, and (2) we should deny Sacred Oak's

7

request for Rule 29.3 relief because Sacred Oak has not presented a showing of compelling circumstances to establish a right to relief or fully explained the facts necessary to show that the requested relief is necessary to preserve the parties' rights. The Commission contends that reinstating the temporary injunction would operate to change the status quo, not preserve it, because Sacred Oak's psychiatric hospital has been closed since the Commission issued its December 2020 Order. The Commission also focuses on the facts leading to the December Order, arguing that Sacred Oak's facility was closed due to concerns about patient safety.

In reply, Sacred Oak points out that the Commission is incorrect that reinstating the temporary injunction would change the status quo rather than preserving it, because in the context of injunctive relief, the status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding). Thus, Sacred Oak argues, by restraining the Commission from enforcing the December 2020 Order, the trial court properly required the Commission to restore the status quo "that existed prior to [the Commission's] enforcement of the December 2020 Order" by "reinstating and returning any state license or certification from [the Commission] held and/or possessed by Sacred Oak on December 20, 2020." Moreover, the Commission stipulated in the trial court that Sacred Oak would suffer irreparable harm and economic injury without the temporary injunction, and Sacred Oak argues that the stipulated-to irreparable harm is the type of "compelling circumstances" demonstrating that Rule 29.3 relief is "necessary to preserve the parties' rights." In addition, Sacred Oak asserts the Commission's characterization of certain facts is disputed and that "[t]he essence of the parties' dispute in this case is [the Commission's] false findings from [its November 2020] survey and its denial of Sacred Oak's right to challenge them before any tribunal."

8

**Texas Civil Practice and Remedies Code Section 51.014(b) stay**

Sacred Oak urges us to reconsider our 2014 holding in *In re Texas Education Agency* and determine that the Section 51.014(b) stay does not apply to preclude the trial court from conducting a counter-supersedeas hearing. Sacred Oak contends that because in a suit against the State, the State routinely files a plea to the jurisdiction and an interlocutory appeal of the denial of the plea, the application of the Section 51.014(b) automatic stay effectively nullifies Rule 24.2(a)(3)'s provision allowing the trial court to retain discretion to grant counter-supersedeas in a matter arising from a contested case in an administrative enforcement action. However, not every case arising from a contested case in an administrative enforcement action will necessarily be subject to the Section 51.014(b) automatic stay, so the Rule 24.2(a)(3) exception is not actually nullified by the stay's application. Taking into consideration that fact and the Texas Supreme Court's recent holding in *In re Geomet*, 578 S.W.3d at 87, which affirms that a court of appeals is not authorized to lift the Section 51.014(b) stay either "altogether or for a limited purpose," we decline to reconsider our prior opinion in *In re Texas Education Agency*. We conclude that the trial court correctly determined that it lacked discretion to consider Sacred Oak's motion to counter-supersede the temporary injunction.

**Our authority to grant Rule 29.3 temporary relief to preserve the parties' rights**

Rule 29.3 allows us to "make any temporary orders necessary to preserve the parties' rights until disposition of the appeal." The Texas Supreme Court recently confirmed that courts of appeals have the power to provide relief from the State's automatic right to supersedeas under Rule 29.3, even when Rule 24.2(a)(3) applies to preclude a trial court from issuing a counter-supersedeas order. *See In re Texas Educ. Agency (In re TEA)*, 619 S.W. 3d 679, 692

(Tex. 2021) (orig. proceeding) (holding "court of appeals was not without power to issue temporary relief" under Rule 29.3 from State's automatic superseding of trial court's temporary injunction); *see also Texas Education Agency v. Houston Independent School Dist. (HISD)*, 609 S.W.3d 569 (Tex. App.—Austin 2020, order) (per curiam) (issuing temporary order continuing trial court's injunction pending disposition of appeal). In *In re TEA,* the supreme court denied the state agency's request for mandamus relief from this Court's Rule 29.3 temporary order continuing the trial court's temporary injunction for the duration of the appeal. 619 S.W.3d at 692. In that case, the trial court had enjoined the TEA's Commissioner from appointing a board of managers to replace HISD's elected trustees, appointing a district-level conservator, and lowering HISD's accreditation status. *Id.* at 681.

In this context, in which Sacred Oak seeks a Rule 29.3 temporary order to protect the right it would otherwise have under Rule 24.2(a)(3) to seek counter-supersedeas, it is appropriate to consider the purpose of supersedeas. The purpose of supersedeas is "to preserve the status quo by staying the execution or enforcement of the judgment or order appealed from pending the appeal." *Id.* at 681 (quoting *Shell Petrol. Corp. v. Grays*, 62 S.W.2d 113, 118 (1933)). However, as in *In re TEA*, "[i]nstead of preserving the status quo," the Commission's "suspension of the temporary injunction would, in this case, have the contradictory effect of permitting the status quo to be altered, because if compliance with the injunction were not required," Sacred Oak's license to operate its facility, like "HISD's manner of governance and accreditation rating[,] could be changed from 'the last, actual, peaceable non-contested status [that] preceded the pending controversy.'" *Id.* (quoting *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016)). The last peaceable non-contested status before the controversy here was that Sacred Oak's psychiatric hospital was licensed and open.

The procedural postures of this case and *In re TEA* are similar, with both cases involving a trial court's grant of a temporary injunction enjoining a State agency from taking or enforcing final administrative action against a party governed by the agency's regulations after the parties have engaged in a lengthy administrative process. *See id.* at 681. The Commission attempts to distinguish this case from the facts in *HISD* and *In re TEA* by arguing that part of this Court's rationale for granting Rule 29.3 relief was that the TEA's decision was not yet final and HISD had sued to prevent a final decision. Thus, the Commission argues, we were attempting to preserve the status quo before the TEA made a final decision. The Commission contends that a different analysis should apply here because the December 2020 Order is a final decision, which required Sacred Oak to close, and thus a Rule 29.3 order allowing it to reopen will change the status quo rather than preserving it.

This argument misconstrues the Court's point in *HISD*, which was that absent our "inherent power to make temporary orders to preserve the parties' rights until disposition of the appeal, the application of Rule 24.2(a)(3) would prevent a party from ever meaningfully challenging acts by the executive branch that the party alleges to be both unlawful and reviewable by courts and that it further alleges will cause it irreparable harm." *HISD*, 609 S.W.3d at 578. In *HISD*, unlike in this case, once the TEA issued a final decision, by statute that decision would be unreviewable by any court; in contrast, here a disputed issue is whether Sacred Oak is entitled to further review of the Commission's decision in the December 2020 Order (with the Commission contending both that Sacred Oak waived its right to an appeal and that it has failed to exhaust its administrative remedies). Thus, our point in *HISD* was not, as the Commission argues, that the status quo was whatever the status was before the agency's order became final; it was that we have the power to preserve a party's right to judicial review of acts

11

that it alleges are unlawful and will cause it irreparable harm. *See id.* In this case, we note that the Commission conceded at the hearing that Sacred Oak faced irreparable harm from continued closure of the hospital if the Commission enforced the December 2020 Order, and it does not dispute that Sacred Oak would be irreparably harmed by continued closure in its response to the Rule 29.3 motion. And again, the status quo to be preserved is the last peaceable non-contested status before the controversy, which in Sacred Oak's case means that it was licensed and open.

One difference between this case and *HISD* is that the TEA's rules specifically provided that HISD's right to a formal review of the Commissioner's decisions was not a contested-case hearing, *id.* at 575, while in this case Sacred Oak contends that it was improperly denied its right to a contested-case hearing before the Commission denied its license renewal, and there is now an administrative hearing docketed by the Commission's appellate division. Thus, but for the application of the Section 51.014(b) stay, the trial court would have retained discretion under Rule 24.2(a)(3) to allow Sacred Oak to counter-supersede the temporary injunction and likely would have granted its counter-supersedeas motion for the same reasons that it granted the temporary injunction. As the supreme court noted in *In re Texas Education Agency*, the Rule's exception for matters arising from contested-case hearings left intact the court's holding in *In re State Board for Educator Certification*. In that case, construing Rule 24.2(a)(3) as it existed in 2014, the supreme court concluded:

> TRAP 24.2(a)(3) gives the trial court discretion, quite sensibly, to prevent the State from re-revoking Montalvo's certification—the ultimate professional sanction—while it spends years appealing the court's reversal of the State's first revocation, something the trial court found "arbitrary and capricious." The State—as yet unsupported by a victory on the merits in any court—wants to strip Montalvo of his livelihood while the appellate process grinds on, and if he manages to regain his professional license after having been kicked out of his profession for years—well, bygones. That's a striking assertion of unbridled

12

> executive power—to enforce administrative orders that a trial court has reversed—
> and TRAP 24.2(a)(3) recognizes the judiciary's authority to say no.

*In re State Bd. for Educator Certification*, 452 S.W.3d 802, 809 (Tex. 2014). The fact that this case falls into Rule 24.2(a)(3)'s exception for contested cases also supports our granting the Rule 29.3 motion and reinstating the temporary injunction.

Finally, the magnitude of the parties' competing rights that are at issue here is similar to the magnitude of the parties' rights that were at issue in *In re TEA*, including the component of a public interest. In *In re TEA*, the supreme court noted that it was "sensitive to [the TEA's] concerns that protracted litigation without suspension of the temporary injunction could delay remedial measures designed to protect students and improve academic achievement," 619 S.W.3d at 690, and here we are equally sensitive to the patient-safety concerns alluded to by the Commission. In its response, the Commission disputes Sacred Oak's assertion that it has "cared for 4,602 psychiatric patients without a single patient death or jeopardy to patient safety." The Commission points to its finding in the June 2019 Notice of Violation of ligature risks to patients, which it asserts "posed a significant and serious risk to patient safety," and to a December 4, 2020 letter that the U.S. Department of Health & Human Services' Centers for Medicare & Medicaid Services division (CMS) issued to Sacred Oak.

As an initial matter, we note that under the Commission's own rules, it could only allow Sacred Oak to enter into a probation period if its facility's noncompliance with the rules "[does] not endanger the health and safety of the public." 26 Tex. Admin Code § 510.83(4) (2021) (Health & Human Servs. Comm'n, Enforcement). A review of the evidence presented to the trial court at the temporary-injunction hearing shows that, as required by the Agreed Order, Sacred Oak engaged an outside consultant to create and implement a corrective action plan for

13

the violations addressed by the Agreed Order, including the ligature risks identified in the June 2019 Notice of Violation. According to the Corrective and Preventive Action Plan:

> Actions to correct these deficiencies occurred immediately once identified. All ligature risk[s] have been mitigated and the environmental assessment is an ongoing living document that is discussed at committees routinely. All admitted patients at risk of self-harm in 2019 and so far in 2020 have been safely discharged to an outpatient therapy program — No patient harm has occurred in the facility.

In the December 2020 Order, which was based on deficiencies identified by the Commission in its survey conducted at the end of Sacred Oak's probation period, the Commission does not allege that the ligature risks had not been mitigated or that there was any ongoing deficiency in the area of suicide prevention. And while the CMS letter states that Sacred Oak "failed to meet one or more Medicare requirements, including deficiencies that represent an **immediate jeopardy** to patient health and safety," the letter does not specify what those deficiencies are beyond stating that Sacred Oak "was not in compliance with the following Conditions of Participation: 42 CFR 482.12 Governing Body[;] 42 CFR 482.13 Patient Rights." Moreover, as Sacred Oak points out in its reply, the CMS letter was based on its review of records from the Commission's November 4, 2020 survey conducted at the end of Sacred Oak's probation period—the survey that alleges new deficiencies, which Sacred Oak disputes, and those disputed deficiencies are the basis for Sacred Oak's suit asserting its right to a hearing on those new alleged violations.

We have reviewed the deficiencies cited by the Commission in the December Order. We have also reviewed the evidence submitted to the trial court at the hearing, which includes the corrective action plan created by Sacred Oak's outside consultant, the monthly reports that the consultant sent to the Commission, and the Commission's post-probation survey

14

report (which is the basis for the December 2020 Order). While we make no comments on the merits of either party's arguments regarding the deficiencies alleged by the Commission in the December 2020 Order, we note that the alleged violations that appear to bear most directly on patient safety relate to patient seclusions or restraints (which can include medication as well as physical restraint), with the treatment of one patient (Patient #11) being cited in the December 2020 Order in connection with multiple alleged violations. We note that nothing in the December 2020 Order or the Commission's survey report indicates that the treatment of Patient #11 ever resulted in an immediate threat to the patient's health or safety.

We further note that the Commission was receiving monthly reports from Sacred Oak's outside consultant regarding Sacred Oak's progress in implementing the specific actions identified in the corrective-action plan and confirming whether Sacred Oak was sustaining compliance with all applicable statutes and regulations. Under the terms of the Agreed Order, the Commission could have denied Sacred Oak's license renewal at any time during the probation period if it found Sacred Oak had not made sufficient progress in implementing the plan and achieving sustained compliance. Instead, at the end of the period, when Sacred Oak requested the Commission survey the facility as required by the Agreed Order, the Commission "identified and cited deficient practices as outlined in the attached Statement of Deficiencies." Accordingly, "[a]s a result of the deficiencies found during the survey, the Commission [found Sacred Oak] did not achieve sustained compliance with all applicable statutes and regulations by the end of the probation period," and denied Sacred Oak's license renewal application. *See also* 26 Tex. Admin Code § 510.83(1)(J) (2021) (Health & Human Servs. Comm'n, Enforcement) (allowing Commission to deny license for failure to comply with applicable requirements within designated probation period). Notably, in opposing Rule 29.3 temporary relief, the Commission

15

does not argue that it denied Sacred Oak's license renewal on the basis of Commission Rule 510.83(3), which allows the Commission to "suspend a license for 10 days pending a hearing if after an investigation the department finds that there is an immediate threat to the health or safety of the patients or employees of a licensed facility." 26 Tex. Admin Code § 510.83(3) (2021) (Health & Human Servs. Comm'n, Enforcement). Because the Commission does not contend that it probated or denied Sacred Oak's license based on "an immediate threat to the health or safety" of its patients or employees, nor does it point to such a violation having ever occurred when arguing against the reinstatement of the trial court's temporary injunction, in contrast to the irreparable harm Sacred Oak will undisputedly suffer from continued closure, on balance, the Court concludes that Sacred Oak has shown "compelling circumstances" that require the Court to reinstate the trial court's temporary injunction to preserve the parties' rights. *See McNeely v. Watertight Endeavors, Inc.*, No. 03-18-00166-CV, 2018 WL 1576866, at *1 (Tex. App.—Austin Mar. 23, 2018, order) (per curiam) (citing *Lamar Builders, Inc. v. Guardian Sav. & Loan Ass'n*, 786 S.W.2d 789, 791 (Tex. App.—Houston [1st Dist.] 1990, no writ) (requiring movant for Rule 29.3 relief to make a clear showing it is entitled to relief, including "compelling circumstances" establishing necessity for relief). Accordingly, we grant Sacred Oak's request for Rule 29.3 temporary relief and order that the trial court's temporary injunction is reinstated to preserve the parties' rights until the disposition of this appeal.

It is ordered on June 9, 2021.


Before Justices Goodwin, Triana, and Kelly
  Justice Goodwin not participating

16