## TURNBOW et al. v. BISHOP et al.
### No. 4724.

Court of Civil Appeals of Texas. Texarkana.
April 26, 1934.

Rehearing Denied May 3, 1934.

Saye, Smead & Saye, of Longview, for appellants.

Goggans & Ritchie, of Dallas, for appellees.

JOHNSON, Chief Justice.

In this case, and in the case of W. C. Turnbow et al., Appellants, v. Petroleum Production Corporation of Chicago, Appellee, No. 4725, on the docket of this court, the appellees were the plaintiffs in the trial court, and appellants were defendants in the trial court. A hearing was had in the trial court on the respective applications of the plaintiffs for the appointment of receivers in each of the two cases upon the same evidence, and the cases have been in this court consolidated for the purpose of submission. In the case of Howard P. Bishop et al., Plaintiffs, v. W. C. Turnbow et al., Defendants, in the trial court, plaintiffs in substance alleged that the defendant W. C. Turnbow acquired title to an oil and gas lease covering 20 acres of the Castleberry survey in Gregg county known as the Pearson lease, but subject to an oil payment of $100,000 payable out of one-fourth of seven-eighths of the leasehold interest. That about June 6, 1931, W. C. Turnbow conveyed an undivided two-eighths in said leasehold to Howard P. Bishop and John C. Hirschfield, plaintiffs, and on the same date by separate instrument conveyed to the plaintiff John C. Hirschfield an additional one-eighth interest therein. That later W. C. Turnbow conveyed the remaining five-eighths of the leasehold interest to defendant W. C. Turnbow Petroleum Corporation. It is further alleged that about the time of the sale of the interest to the plaintiffs they executed a written instrument giving the defendant W. C. Turnbow authority and power to sell their part of the oil from the lease and to receive payment thereof and to account to said plaintiffs monthly; that the agreement stipulated that it could be canceled by filing written notice thereof; and that the same had been so canceled on October 10, 1932. That defendants are in possession and operating the property, and are not properly accounting to plaintiffs for their interest therein; that defendants have entered into a conspiracy to swindle and defraud plaintiffs; that the properties were being mismanaged, and in a manner to conceal from plaintiffs the amount of oil being produced therefrom; that oil had been and would be produced from the leases in great quantities in violation of the rules and regulations of the Railroad Commission. That without authority of plaintiffs same was being sold by defendants to persons unknown to plaintiffs and at prices far below the market value of the oil. That plaintiffs' property was in danger of being lost, removed, wasted, and destroyed.

In the other case, Petroleum Production Corporation of Chicago, Plaintiff, v. W. C. Turnbow et al., the allegations in plaintiff's petition were in all material respects similar to facts alleged in the first case, other than it involved different plaintiffs and different property, in which case the property involved is a six-acre lease known as the McGrede lease in the Sanches survey, Gregg county, the seven-eighths leasehold interest is subject to a one-eighth overriding leasehold interest, and the remainder of which leasehold is owned one-half by the plaintiff Petroleum Production Corporation of Chicago, and the other one-half is owned by the defendant W. C. Turnbow Petroleum Corporation.

In each case plaintiffs prayed for an accounting from all the defendants and for a foreclosure of their alleged lien which they claimed against the defendants' interest in the property by reason of the alleged failure of the defendants to properly account to them for their interest in sale of oil, and respectively prayed for the appointment of a receiver in each case.

The defendants W. C. Turnbow and the W. C. Turnbow Petroleum Corporation filed separate verified answers, denying the allegations in plaintiffs' petitions, and specifically denied, under oath, the alleged mismanagement, and concealment as well as all other acts of wrongdoing charged against them by plaintiffs.

W. C. Turnbow further pleaded under oath that pursuant to request of plaintiffs on September 30, 1933, he had furnished them a complete statement showing all the oil that had been run from the said leases and the prices received therefor; and that the books of the said W. C. Turnbow Petroleum Corporation showed all oil runs and moneys received from the property; that the properties, accounts, and books were accessible to the plaintiffs; that since he furnished them the report plaintiffs had made no complaint of any kind with respect thereto, and had made no complaint with respect to the manner of operating property, and made no request for additional information pertaining thereto. He further alleged as his reason for not having paid over to plaintiffs the proceeds from the sale of their interest in oil produced was that he had been served with notice by one Thomas B. Lewis, an attorney representing certain stockholders of the Chicago Oil Corporation which claimed that the stockholders of said corporation were entitled to the funds derived from plaintiffs' interests in said properties, and notifying him (W. C. Turnbow), that if said moneys were paid to plaintiffs he would be held responsible therefor. W. C. Turnbow in his answer offered to pay into court the amount of money received for the oil runs to the account of plaintiffs and prayed that the Chicago Oil Corporation be made a party to the suits and that the court determine the rightful ownership of said funds.

The W. C. Turnbow Petroleum Corporation, after its sworn denial of the material allegations of plaintiffs' bill, alleged that it held title to the interest formerly owned by W. C. Turnbow; that it was operating the lease in a businesslike manner; was running the oil to the Union Refining Company; that there was no concealment on its part; alleged plaintiffs had access to the properties, books, and accounts, etc.; and denied plaintiffs' right to have receiver appointed of this defendant's interest in the property because of the alleged failure, if any, of plaintiff's agent, W. C. Turnbow, to account to plaintiffs for oil runs which he had received belonging to them.

On the hearing before the court it was agreed by plaintiffs and defendants that as to the Pearson lease, subject to the unpaid portion of the $100,000 oil payment, that plaintiffs own three-eighths and W. C. Turnbow Petroleum Corporation owns the remaining five-eighths of the seven-eighths leasehold interest; and that there are two producing wells on the property; that with respect to the McGrede lease, subject to the one-eighth overriding leasehold interest, the remaining six-eighths of the leasehold is owned one-half by plaintiffs and one-half by defendant W. C. Turnbow Petroleum Corporation, and that there was one producing well on this lease.

Plaintiffs introduced in evidence an accounting made by W. C. Turnbow to plaintiffs of the oil produced and sold from the two leases, covering the time from the development of the property in August, 1931, to September 30, 1933; and plaintiffs introduced the reports made by W. C. Turnbow for the W. C. Turnbow Petroleum Corporation to the Comptroller of Public Accounts of the oil produced and sold from the two leases, in computing the gross production tax due the state of Texas. There is a discrepancy between the reports made to plaintiffs and the reports made to the State Comptroller as to the amount and price of oil produced and sold from the leases. Both reports showed that more oil had been produced from the leases than the allowable fixed by the Railroad Commission.

E. B. Clark, witness for plaintiff, testified that he resided near the McGrede lease and that there is a by-pass or pipe line leading off from it between the well and the tank, that was put in there last spring (1933) some time, and that he did not know where it led to.

A. G. Carter, witness for plaintiff, testified that he was employed by the Railroad Commission, investigating oil wells, and that on the night of November 20, 1933, he found a by-pass leading from the Pearson lease to the Union Refinery, that he felt of the pipe and it was hot, and he judged that oil was being run through it into tanks at the refinery; that defendants disconnected it, and there was no overproduction now from the leases that he knew of. The plaintiffs did not testify. The defendants offered no testimony.

The court appointed a receiver in each case. The defendants W. C. Turnbow and the W. C. Turnbow Petroleum Corporation have appealed.

It is the contention of appellants that there is no evidence authorizing the appointment of a receiver. Appellees contend that the evidence brings them within the provision of subdivision 1, article 2293, R. S. 1925, which provides:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

"1. * * * Between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured." .

We are not of the opinion that appellees' contention can be sustained. In order to bring the case within the provisions of the terms of the statute above quoted, it is not sufficient on hearing that the plaintiffs show an interest in the property or fund, but it is necessary to further show that such property or fund is in danger of being lost, removed, or materially injured, unless a receiver is appointed. That the wells on the property in controversy have been permitted in the past to produce more oil than the allowable fixed by the Railroad Commission is not deemed sufficient to authorize the appointment of a receiver. Ortiz Oil Co. v. Railroad Commission (Tex. Civ. App.) 62 S.W.(2d) 376; Crossman v. State (Tex. Civ. App.) 65 S.W.(2d) 380; Trans-State Oil Co. v. State (Tex. Civ. App.) 66 S.W.(2d) 384. And it will be noted in the present case that there is an absence of any testimony that such overproduction was without the knowledge and consent of plaintiffs or that any harmful effect has resulted therefrom to plaintiffs or the property. It is further observed that this record is without evidence showing that plaintiffs have or will be denied full access to or authority over the management or operation of the property, or that it has been or is likely to be operated in any manner not to the best interest of the property and all parties concerned, or that plaintiffs have been denied the right to take charge and operate the property, either by themselves or in conjunction with defendants.

The fact that W. C. Turnbow has not paid over to plaintiffs the moneys due them for their interest in the sales of oil is accounted for by him in his sworn answer, to the effect that he has been served with notice that other parties are claiming an interest in such funds. Should it be held that this is an insufficient excuse on the part of W. C. Turnbow in not paying to plaintiffs said funds, it at least removes any reflection of fraudulent intent on his part. He offers to tender the fund into court, and prays to be freed from liability to such claimants. That the books of the company will reflect the true amounts due plaintiffs is not controverted. Hence, it does not appear in evidence that plaintiffs are in danger of losing their debt, or "that the property is in any danger of being lost, removed or materially injured," so as to bring the case within the provisions of the statute, or any of the authorities cited by appellees, authorizing the appointment of a receiver.

The order of the trial court appointing a receiver is reversed, and judgment is here rendered dissolving the appointment of a receiver.