**TEXAS CONSOLIDATED OILS v.
HARTWELL et al.**

No. 14400.

Court of Civil Appeals of Texas.   Dallas.
May 18, 1951.

Rehearing denied June 8, 1951.

Johnson, Bohannon, Prescott & Abney and Carrington, Gowan, Johnson & Walker, all of Dallas, for appellant.

Johnson & Rembert and Thompson, Coe & McCord, all of Dallas, and Wynne & Wynne, of Wills Point, for appellees.

BOND, Chief Justice.

This is an appeal from an interlocutory order of a district court of Dallas County appointing a receiver of all assets, books, records, money, leaseholds and oil runs, with most comprehensive powers and directions for the receiver to take charge of and operate the oil business of Texas Consolidated Oils, Inc., alleged to have a yearly income from oil runs in excess of $1,000,000, and the evidence shows capital investment in oil wells and leaseholds of the reasonable value of $60,000,000.

The suit was instituted by plaintiff (appellee) M. T. Hartwell, seeking recovery for professional engineering services in evaluating oil properties belonging to H. W. Snowden and Swiss Oil Company, Inc., under verbal contract of employment with Snowden individually and as President of Swiss Oil Company, and alleged to be for the sole benefit of said Snowden and Swiss Company; but which in fact, the defendant alleges, was "primarily for the benefit of the defendant Texas Consolidated Oils," evidenced by subsequent ratification by the said Consolidated Oils, who received all benefits thereunder to induce Reconstruction Finance Corporation to make a loan of $15,000,000; thus each of the defendants became liable to the plaintiff in the sum of $8,059.27.

Subsequent to the filing of plaintiff's suit, the appellees Olen N. Jaye and Mr. and Mrs. Van Wagner intervened; Jaye for commissions claimed to be due on an alleged contract of employment entered into by him as agent of a group of oil refiners with a Mr. Ronnie B. Smith, agent for a group of oil producers (none of whom are involved here), on December 4, 1947, for the sale and purchase of oil runs from various oil wells of the group of producers, resulting in commissions due him in the sum of $1,286,000. The alleged contract evidenced by letter, pertinent here, reads:

"Dear Mr. Jaye: This letter is addressed to you as the agent authorized to contract for and on behalf of * * * * and is intended to confirm the agreement entered into between this company and your group as follows:

"Texmass Petroleum Company Represents: That it is the owner of various producing oil and gas wells located in the States of Texas, Oklahoma, New Mexico and Kansas; that it is negotiating the purchase of certain other producing properties from the Wil-Tex Petroleum Company; that the location and description of the properties involved in the contemplated purchase are well known to you and the Texmass Petroleum Company; that the Wiltex properties are currently producing an average of 80,000 barrels of oil per month and it is believed that additional drilling permissible on said properties would increase the average monthly production to approximately 150,000 barrels of oil per month.

\*     \*     \*     \*     \*     \*

"You Represent: That the refining group as above identified, is in a position to advance to this company upon the terms and conditions hereinafter set forth and to be later negotiated, the sum of Four Million ($4,000,000) Dollars.

\*     \*     \*     \*     \*     \*

"Texmass Petroleum Company is desirous of selling to you at this time a portion of its production of oil and gas and you are desirous of purchasing such production. It is therefore hereby agreed by and between the refining group and this company as follows:

"(1) Subject to the approval of titles by your attorneys, you agree to advance to Texmass Petroleum Company the sum of Four Million ($4,000,000) Dollars. This loan shall be for a period of five (5) years, shall bear interest at the rate of four per cent (4%) per annum and shall be secured by a deed of trust, chattel mortgage and assignment of production from the properties which we have referred to as the Wil-Tex. It is understood that the properties would be given as security for this loan or would be acquired by this company under a contract being negotiated with the Wil-

Tex Oil Company and that Texmass Petroleum Company shall be allowed to retain so much of the proceeds of runs from the properties as will be reasonably necessary to pay the costs of operation of the properties.

"(2) In consideration of the making of said loan of Four Million ($4,000,000.00) Dollars, Texmass Petroleum Company will give to refining group a first call or option upon all of its production of oil or gas from the following properties: Warren Lease, Kay County, Oklahoma; McGee Leases, Oklahoma County, Oklahoma; Clink and Henderson Leases, McClain County, Oklahoma; Wil-Tex Leases in Jackson, Refugio and Nueces Counties, Texas and the Cockburn Lease in Wharton County, Texas. This call or option shall be for a period of five (5) years from the consummation of this contract with a provision that it may be extended for an additional five (5) years. The price to be paid for any and all oil or gas purchased under said option or any extension thereof shall be at the price posted for oil of like quality in the various fields where oil covered by this option is produced.

"(3) Texmass Petroleum Company will execute, upon consummation of the loan above referred to, its promissory note in the principal amount of Four Million ($4,000,-000.00) Dollars bearing interest at the rate of four per cent (4%) per annum payable in such installments as may hereafter be agreed upon and will further execute as security for the payment of said note a deed of trust and chattel mortgage covering the Wil-Tex properties. Further, Texmass Petroleum Company will assign to the refining group such portion of the proceeds of runs from the Wil-Tex properties as the parties hereto may subsequently agree, the proceeds so assigned to be applied first to the payment of interest, and then to the reduction of principal of said loan.

\*    \*    \*    \*    \*    \*

"(2) Texmass Petroleum Company now owns and/or have the contract right to acquire a considerable number or producing leases in the Marigale and Norman Paul Fields of Wood County, Texas. The pro-

duction from these leases is currently covered by a crude oil purchase contract running for a period of two (2) years from December 1, 1947. That crude oil purchase contract contains a proviso for its termination in the event of a sale of all our properties in the two fields to a person not controlled by or to a company in which Texmass Petroleum Company and H. W. Snowden have no interest. We would like to discuss with you the possibility of effecting a sale of the properties to you, in which event you would of course acquire the right to dispose of the production from our leases in the two fields.

"(3) We have stated to you that this company is currently considering negotiating a large loan which would refinance all its present loans and provide for the additional funds for working capital and the liquidation of miscellaneous unsecured claims. You have expressed a desire to participate in that refinancing. In the event we can agree upon a contract covering these additional items we would expect to give you an opportunity to participate to any extent desired by you in the refinancing program.

"It is contemplated that the refining group and Texmass Petroleum Company will, as soon as practicable, execute a formal contract embodying our agreement as above outlined and that when the other matters to be covered by our subsequent negotiations have been reduced to agreement, formal contracts will be executed as to them.

"If this letter correctly sets forth our agreement, please note your acceptance in the space provided below.

"Executed in triplicate this 4th day of December, 1947.

"Yours very truly,
Texmass Petroleum Company
By   H. W. Snowden/s
_____
H. W. Snowden, President

"Accepted:
_____
Agt. for Producers Refining Co.
Loyd A. Fry Roofing Company
Trumbull Asphalt Company of Delaware

Asphalt Products Co.
Petroleum Reserve Corporation
Delta Refining Company
Southern Petroleum Company
Ternan Frist & Co. & Ronnie Smith
Pacific Eastern Corporation
   By Olin N. Jaye/s."

The Wagner claim is based upon an alleged equitable trust in the amount of one-third of the corporate assets of the defendant Texas Consolidated Oils in the reasonable cash value of $20,000,000, resulting from its purchasing all the assets of the Texmass Oil Corporation and Texmass Petroleum, in which they (the Wagners) claim a one-third interest.

The defendant Consolidated Oils in answer to plaintiff's and interveners' suit, denied under oath that any officer or agent of it ever employed the plaintiff Hartwell or any of the Interveners to render or perform any service for it or in its behalf; denied that said defendant ever authorized a ratification of such employment; that it did not do so; and denied that any trust estate exists, or ever existed, in the corporation, in which the interveners (Wagners) have an interest. Also denied that it was in an insolvent condition, or that it owed any debt, claim, or lien which it is unable to pay, as to justify putting its properties into the hands of a receiver.

The issues involved in the suit are greatly controverted. As to the intervener Jaye, it is uncontroverted that he or his alleged company never extended the $4,000,000 loan to Snowden, or to the Texmass Petroleum Company, or to the defendant, Texas Consolidated Oils.

■ It is not our province to determine in this appeal as to whether the respective claims of the plaintiff and interveners may eventually be established on trial to the merits against Snowden, or claims for which the appellant herein (Texas Consolidated Oils) may be adjudged liable on the trial. The paramount question in all suits seeking interlocutory appointment of a receiver to take over one's property, is whether or not the applicant has a meritorious cause, claim, or debt, of

such reasonable potentiality as may be inevitably established on trial to the merits, and that the debtor will, or has threatened to place his property beyond the reach of his creditors; or, in the case of a corporation, that it has so mismanaged its affairs as will likely place its properties so as to be unable to satisfy its valid and subsisting obligations. A verdict cannot stand, based upon speculation, or conjecture, or anticipation, or fear of some eventuality that may never occur.

■ In view of a subsequent trial on the merits, we pretermit discussion of the evidence; suffice to say we are of the opinion that such evidence is insufficient to justify the exercise of the harsh remedy of appointing a receiver. The evidence here presented falls far short of establishing that the plaintiff and interveners have a debt or claim against the defendant corporation of such potential certainty, or that the corporate affairs are being so mismanaged, as that a receiver should be appointed; or that the applicants would inevitably lose their debt or claim if established by a preponderance of the evidence on trial of the suit. The mere fact that a creditor has an unliquidated claim against a corporation does not justify the appointment of a receiver,—which appointment often results in total destruction of the corporate concern. Conservation of the assets through receivership is ofttimes a myth—a total destruction of the corporate assets. No more radical remedy could be devised which would discredit, cripple and, in the majority of instances, put to an end any business or enterprise; and such remedy should never be applied unless some serious injury to the complainant will result, or is threatened.

■ The plaintiff Hartwell and the intervener Jaye, at most, are only general creditor-claimants, having unsecured unliquidated claims against the defendant corporation; and that, too, by an alleged circuitous channel through defendant Snowden, Swiss Oil Company, and Texmass Petroleum Company. "A receivership can never be properly granted at the instance of a general creditor of a corporation until

the point has been reached in its affairs at which the trust-fund doctrine may be invoked by the creditors, and when that point is reached the statute applies." Brenton & McKay v. Peck, 39 Tex.Civ.App. 224, 87 S.W. 898, 902; Supervend Corp. v. Jones, Tex.Civ.App., 235 S.W.2d 707.

■ In the case here it is not shown that the defendant Snowden, or the defendant Texas Consolidated Oils, is unable to respond to any judgment which the plaintiff or interveners may recover against them or either of them. As to the claim of the plaintiff Hartwell, the defendants have deposited into Court Cashier's Checks in the sum of $8,500 on Mercantile National Bank of Dallas and First National Bank of Dallas, conditionally payable to the plaintiff on the establishment of his alleged claim of $8,058.27 on trial to the merits; and, as to the interveners, their claims in the premises are not so incontestible as to warrant the appointment of a receiver. The only things shown by the record that affect the Corporation or its properties, outside the greatly contested claims, are that the Consolidated Oils owes the RFC a debt of $15,000,000, which debt is secured by a deed of trust lien on the corporate oil wells and oil leases estimated by the evidence to be of the value of 40 to 60 Million Dollars, with deed of trust or mortgage, covenants of control and division of the oil runs,— $75,000 payable monthly in liquidation of its debt to the RFC, and the balance payable to the corporate entity; that it has no assets outside of the mortgaged property, and that its bookkeeping and managerial affairs are not in keeping with approved modern-day business accounting, and the salaries of its officials, agents and employees, and attorneys fees are excessive. The appeal is presented at the instance of appellant, with statement of facts approved by the trial court of some 1500 pages, with numerous exhibits; and, at the instance of appellee, findings of fact and conclusions of law by the trial court were also presented. The findings and conclusions are catagorically assailed by appellant as having no support in the evidence. Appellees contend that the findings of fact, though controverted, are supported in evidence, and in the exercise of the trial court's judicial discretion are conclusive, thus binding on this Court. In many appeals, such is the rule, followed by this and other Appellate Courts of this State. However, in Alworth et al v. Morris et al. Tex.Civ.App., 19 S.W.2d 212, 214, Chief Justice Hickman (now Chief Justice of the Supreme Court), speaking for the Eastland Court of Civil Appeals, says: "* * * that the trial court is vested with discretion in the matter of the appointment of receivers (in equity). That, however, is not an unbridled discretion * * *." See Supervend Corp. v. Jones, Tex.Civ.App., 235 S.W.2d 707, opinion by this Court.

■ In order to justify the appointment of a receiver, equities must appear in behalf of complainant which require such appointment, independent of a showing that a corporation is insolvent. Art. 2293, Vernon's Ann.Civ.St. In our opinion no such condition is shown here. Therefore, a receiver was improvidently appointed; the order of the trial court appointing the receiver is set aside, and the receivership vacated. With the record in this appeal there have been filed a great number of exhibits which may, or may not, be of service in the determination of the suit on trial to the merits; thus such are directed to be returned to the District Court with the mandate of this Court, reversing the judgment of the trial court and rendering judgment for appellant.