W. R. HUGHES, Appellant,

v.

MARSHALL NATIONAL BANK, Appellee.

No. 896.

Court of Civil Appeals of Texas, Tyler.

June 24, 1976.

Rehearing Denied July 22, 1976.

Fred Erisman, Longview, J. Harold Hughes, Honolulu, Hawaii, for appellant.

John M. Smith, Roberts, Harbour, Smith, Harris, French & Ritter, Longview, for appellee.

MOORE, Justice.

This is an appeal from an order appointing a receiver. The basic controversy is between Marshall National Bank as Independent Executor of the Estate of Lilla

Long Hughes, deceased, and W. R. Hughes, her surviving husband. The litigation commenced when appellant, W. R. Hughes, filed a petition for a declaratory judgment [1] seeking to have the court to determine and declare that a certain agreement between him and his deceased wife made in 1956 constituted a valid, binding contract dividing their property as of that date. Appellee, Marshall National Bank in its capacity as Independent Executor of Lilla Long Hughes, joined by certain devisees named in her will, answered with a general denial and specially denied that Lilla Long Hughes entered into a contract with W. R. Hughes dividing their properties. The Bank also filed a cross-action seeking an accounting of the community property. Appellant responded with a sworn itemized account showing 47 items of property which he alleged were owned by him and his wife as joint tenants as a result of the 1956 agreement and that all other property held by each party at that time was to be his or her separate property. Not being satisfied with the accounting rendered by W. R. Hughes, the Bank filed an application for the appointment of a receiver to take control and possession of all property in the possession of appellant, both separate and community, including all books and records of W. R. Hughes whether the same pertained to community or separate property. Appellant resisted the application. The matter came on for hearing solely on appellee's application for a receiver. After a trial before the court, the trial court declined to appoint a receiver to take possession of any of the properties except appellant's books and business records. The order appointing the receiver recited as follows:

"1. That the Defendant and Cross-Plaintiff Marshall National Bank as Independent Executor of the Estate of Lilla Long Hughes owns an interest in all of the books and records in the possession of W. R. Hughes which would reflect the type, description and amount of properties that are in the possession of W. R. Hughes, including but not being limited to bank deposit records, certificates of deposit, savings and loan institution records, municipal bond certificates, stock certificates, royalty deeds, mineral deeds, warranty deeds and any other type of instrument or record that would evidence the nature, extent, date of acquisition and funds which were used to make such purchases of properties that are in the hands of and in possession of the Plaintiff and Cross-Defendant W. R. Hughes."

The order further recited that the receiver was to take charge of appellant's books and records and was to make the same available to the Bank for the purpose of making an inspection of the records and making copies thereof. Appellant, W. R. Hughes, timely superceded the order and perfected this appeal.

We reverse and vacate the order appointing a receiver.

Pursuant to the request of appellant, W. R. Hughes, the trial court filed findings of

---

1. In the main suit for a declaratory judgment, appellant, W. R. Hughes, alleged that he and Lilla Long Hughes were married in 1931 at a time when he owned separate properties including mineral royalty interests and that Mrs. Hughes thereafter acquired separate properties by inheritance, gift and purchase; that in 1956, after twenty-five years of unsuccessfully attempting to live together, the parties entered into an oral agreement for permanent separation and a division of the property was entered into by the parties as follows: (1) that all properties recorded in the name of Lilla Long Hughes, or in her possession, was granted her as her separate property, (2) that all property recorded in the name of W. R. Hughes, or in his possession, was granted to him as his separate property, and (3) that 47 specified income producing properties in the nature of oil and gas royalties and mineral interest, as well as the income therefrom, including money on deposit in the community bank account and all income from such properties, were to be owned equally by the parties as joint tenants. Appellant further alleged that W. R. Hughes and Lilla Long Hughes adhered to the agreement and contract accepting the benefits therefrom, annually filing joint income tax returns for seventeen years until the death of Mrs. Hughes on October 23, 1973.

Appellee joined issue by denying that Mrs. Hughes entered into a contract dividing the properties, and relied on the presumption that all property acquired by either party during marriage is presumed to be community property.

fact and conclusions of law. Among other things, the trial court found: (1) that Mr. & Mrs. Hughes were never divorced from the date of their marriage on August 18, 1931, until the date of Mrs. Hughes' death on October 23, 1973, (2) that Mrs. Hughes died testate and the Marshall National Bank was appointed and qualified as Independent Executor of her estate, (3) that on the date of Mrs. Hughes' death various items of community property were owned by them, which community property is now in the possession of W. R. Hughes, (4) that W. R. Hughes has not made an accounting to the Bank of such properties, (5) that W. R. Hughes has possession and control of the books and records which would reveal the description and amount of community property and that the Bank is entitled to inspect the books and records which would reveal the description and amount of the community property, (6) that W. R. Hughes has refused to voluntarily grant the Bank the right to inspect the books and records, (7) that although the Defendants and cross-plaintiffs in this cause would have the right to compel W. R. Hughes to deliver possession of the books and records which will reveal the description and the amount of community properties owned jointly by him and the Estate of Lilla Long Hughes by interrogatories, depositions or other methods of discovery, as is authorized by the Texas Rules of Civil Procedure, they would violate the Dead Man's Statute, commonly known as Article 3716 of Vernon's Revised Civil Statutes and they should not be required to waive such Dead Man's Statute, (8) that the Bank, as Independent Executor, owns an interest in books and records reflecting the type, description and amount of community property, (9) that the books and records are in danger of being lost, destroyed or altered, (10) that the appointment of a receiver was necessary, (11) that the Bank has no other adequate remedy at law or in equity to protect their rights, save and except the appointment of a receiver and unless a receiver is appointed the Bank will suffer irreparable loss, (12) that a receiver should be appointed to take possession of the books and records and the Bank

should be permitted to inspect and make copies of the books and records, but such Receiver should not take possession and control of the actual physical properties of which W. R. Hughes has the possession and control.

The undisputed evidence shows that in response to the Bank's demand for an accounting, appellant prepared a list describing 47 items of land and oil and gas royalties owned by him and his deceased wife as co-tenants as a result of the 1956 agreement and delivered the same to the Bank. The record also shows that division orders were delivered to the Bank for the one-half interest owned by Mrs. Hughes and that at the time of trial the Bank was receiving the proceeds from such royalty interests. The undisputed evidence further shows that appellant delivered to the Bank the sum of $60,538.20 representing Mrs. Hughes' one-half interest in a joint account which the parties maintained for depositing the royalty income from the 47 royalty interests owned by them.

The record reveals that appellant is the owner of a vast estate consisting of several hundred items of real and personal property in the nature of oil royalties, real estate, stocks, bonds and savings accounts situated in various counties throughout the state. His estate is such that it is necessary for him to employ an accountant to maintain a set of books in order to keep track of his income from his various holdings accruing daily.

Article 2293, Tex.Rev.Civ.Stat.Ann. (1971), authorizes the appointment of receivers in the following cases:

"1. In an action . . . between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured."

By his first point appellant contends that the court erred in appointing a receiver

because the Bank failed to allege or prove that it had no adequate remedy at law. We find no merit in this point.

It affirmatively appears from the record that the Bank sought the appointment of a receiver on the grounds stated in Subdivision 1 of Article 2293, supra, and not on an equitable basis as provided for in Subdivision 4. It is now settled that when a receiver is sought on the basis of Subdivision 1 of the statute, allegations and proof of the inadequacy of a legal remedy is not necessary. *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217 (1940). The right to a receiver then becomes a legal right. *Richardson v. McCloskey*, 228 S.W. 323 (Tex.Civ. App.—Austin 1920, writ dism'd).

Appellant asserts by his second point that the trial court erred in appointing a receiver for the books and records because there is no evidence that such books and records are in danger of being lost, removed or materially injured. As we view the record, this contention must be sustained.

■ While the right to receivership is determined solely by the statutory provision, rather than the rules of equity in respect thereto, yet the procedure to be followed in the appointment of a receiver is governed by the rules of equity. Tex.Rev. Civ.Stat.Ann. art. 2319 (1971). *Head v. Roberts*, 291 S.W.2d 483, 484 (Tex.Civ.App. —Fort Worth 1956, no writ); *Zanes v. Lyons*, 36 S.W.2d 544, 547 (Tex.Civ.App.— Dallas 1931, no writ). Under such rules no receiver can be appointed without the necessity therefor being shown to exist by legal evidence.

■ Under the provisions of the statute, courts are without authority to appoint a receiver unless the proof shows that there presently exists actual danger of the property being lost, removed or materially injured. *Gunther v. Dorff*, 296 S.W.2d 638, 640 (Tex.Civ.App.—Waco 1956, writ dism'd); *Whitson Co. v. Bluff Creek Oil Company*, 256 S.W.2d 1012, 1014 (Tex.Civ. App.—Fort Worth 1953, writ dism'd); *Massad v. Wilson*, 83 S.W.2d 806, 807 (Tex.Civ.

App.—Texarkana 1935, no writ); *Turnbow v. Bishop*, 71 S.W.2d 918, 920 (Tex.Civ.App. —Texarkana 1934, no writ); *Richardson v. McCloskey*, supra.

■ The drastic remedy of receivership should never be applied unless the evidence shows that some serious injury to the applicant will result or is threatened. *Texas Consolidated Oils v. Hartwell*, 240 S.W.2d 324, 327 (Tex.Civ.App.—Dallas 1951, mandamus overruled); *Gunther v. Dorff*, supra.

■ It must be kept in mind that the only property involved here is the appellant's books and business records. Therefore, the finding of the trial court can be sustained only if the record contains evidence of probative force showing that there presently exists actual danger of the books and records being lost, removed or materially injured.

After a diligent search of the record we fail to find any evidence of probative force showing that the books and records in appellant's possession are in danger of being lost, removed or materially injured. While the evidence shows that appellant is eighty-three years of age and suffers from health problems, the evidence shows that he is actively engaged in business affairs on a daily basis. Several officials of Longview's First National Bank, where he does business, testified that he was in the bank transacting business almost every day. They further testified that they found him to be a prudent, conservative and astute businessman despite his age. There is nothing whatever in the record to suggest that his books are in danger of being lost, removed or materially injured by reason of any mental or physical infirmity.

The Bank argues that the receivership can be sustained because there is evidence showing (1) that both before and after the death of Mrs. Hughes appellant made several large charitable donations out of the parties' joint bank account, (2) that on January 24, 1974, during a brief illness, not knowing whether he would recover, he wrote a letter to his nephew, J. Harold Hughes, an attorney authorizing him to

take charge of his property, (3) that he purchased a large amount of tax exempt bonds with funds the Bank contends were community funds, and (4) that he deposited large sums of money in three bank accounts designated as his separate estate from income which the Bank contends was community property.

While the foregoing evidence might have been sufficient to show that funds jointly owned by the parties were in danger of being lost or removed, had the court seen fit to appoint a receiver over such property, we fail to perceive how this evidence could constitute any evidence showing the books and records were in danger of being lost, removed or materially damaged. There is no evidence, insofar as we have been able to find, to support the necessary finding that the books and records over which the receiver was appointed is exposed to the hazard contemplated by the statute.

It would appear from some of the findings of fact and conclusions of law that the trial court apparently concluded that it was authorized to appoint a receiver over the books and records in order to preserve the same as evidence and afford the appellee an opportunity to inspect the same and make copies thereof. In our research we have found no case and have been cited none authorizing the appointment of a receiver for such purpose. There is nothing in the statute authorizing the appointment of a receiver for such purpose. In the absence of any evidence showing that the books and records, as such, were in danger of being lost, removed or materially injured, the trial court had no authority to appoint a receiver merely for the purpose of preserving the same as evidence. *Barrett v. Green River & Rock Springs Live Stock Co.*, 28 Wyo. 379, 205 P. 742, 744 (1922). The law provides other and more appropriate means for its protection and preservation under the Rules of Civil Procedure. The fact that the Bank, by following the usual discovery methods, might risk waiving the Dead Man's Statute, supra, would be immaterial.

In view of our ruling that we have made, we do not reach appellant's remaining points attacking the order on other grounds.

Accordingly, the judgment is reversed and the receivership is vacated.