HUMBLE EXPLORATION CO., INC., Appellants,

v.

FAIRWAY LAND COMPANY, Appellees.

No. 05–82–00673–CV.

Court of Appeals of Texas, Dallas.

July 23, 1982.

Rehearing Denied Aug. 24, 1982.

Louis P. Bickel, Bickel & Case, James H. Keahey, Rex A. White, Jr., Oneill, Haase & White, Austin, for appellants.

David Musslewhite, Akin, Gump, Strauss, Hauer & Feld, Kenneth Stohner, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Michael V. Powell, Rain, Harrell, Emery, Young & Doke, R. Jack Ayres, Jr., G.H. Kelsoe, Jr., Kelsoe & Kelsoe, Dallas, Kenneth D. Johns, Jr., G. Michael Curran, Kenneth C. Raney, Jr., Houston, for appellees.

Before TED Z. ROBERTSON, CARVER and WHITHAM, JJ.

CARVER, Justice.

Humble Exploration Company, Inc., prosecutes this interlocutory appeal under the authority of Article 2250, Tex.Rev.Civ.Stat. (1971) seeking to vacate the appointment of a receiver for itself, and its assets and its business, granted upon the application of Fairway Land Company, a Texas limited partnership, and eleven other Texas limited partnerships.[1] We vacate the receiver's appointment because the evidence failed to support the existence of the specific statutory grounds set out in Article 7.05, Tex.

1.  1. FAIRWAY LAND COMPANY AMCAP PETROLEUM ASSOCIATES-1977

FAYETTE OIL COMPANY AMCAP PETROLEUM ASSOCIATES-1978

Bus.Corp.Act Ann. (Vernon 1980) and because the appointment was inconsistent with the usages of equity.

After the appeal of the receivership and the additional application of the Browning interests, the trial court in a second order, "modified" and re-imposed the receivership of Humble, as well as imposed a receivership upon other parties.[2] We hold that the trial court was without jurisdiction to enter the second order, which modified and reimposed the receivership of Humble after the perfection of Humble's appeal on the propriety of the initial appointment of the receiver, and we vacate the second order insofar as it includes Humble within its terms.

The record reflects that Fairway, and twenty other named plaintiffs, filed their original petition against Humble, and seven other defendants on May 26, 1982. The essential dispute in the sixty-six page petition, with exhibits, related to Humble's performance, as operator, under a series of operating agreements among the working interest owners of producing oil wells in the Giddings oil field. The prayer of the plaintiffs, as to the merits of the dispute, was: (1) that Humble be removed as operator; (2) that Humble render a full accounting of its operations; and (3) that the court award to each plaintiff his rightful share of the net proceeds of any oil sold. The plaintiffs also sought attorney's fees and such other relief as they might be entitled to receive. Additionally, the plaintiffs sought the appointment of a receiver of Humble, itself, not of the wells which were the subject of the operating agreements.

Humble was notified orally of the plaintiff's petition and, on the same day, May 26, 1982, filed its petition to remove the case to the bankruptcy court where Humble was a debtor under a Chapter 11 proceeding (rehabilitation with debtor in possession). On the same day, May 26, 1982, the bankruptcy court remanded the plaintiff's cause and the trial court commenced a hearing of the application for the appointment of a receiver. On May 28, 1982, at 3:44 p.m., while the first witness offered by the plaintiffs had not yet been examined by both sides, the trial court entered the questioned order which appointed a receiver of Humble and mandatorily enjoined Humble, its agents, servants, employees, officers, and all other persons, to submit itself, and themselves, to the receiver.

The court fixed the bond of the "applicants" for the receivership at $100,000 and for the injunction at $1,000; however, only twelve of the original twenty-one applicants signed the bonds. Two additional parties originally named as defendants, the Browning interests and Columbia Gas, were realigned as plaintiffs and applicants, but they also failed to sign either of the applicant's two bonds.

On June 1, 1982 (the first business day following the receiver's appointment due to the Memorial Day week-end), Humble perfected its interlocutory appeal to this court by cash deposit in lieu of appeal bond under Rule 356(a) Tex.R.Civ.P.Ann. (Vernon Supp. 1982). Humble also filed an application to this court for injunctive relief suspending the receiver's authority during the pendency of this appeal and for acceleration of this appeal. This court denied injunctive relief but accelerated this appeal, and the merits of the interlocutory appeal were argued on June 18, 1982.

The brief evidence tendered to support the appointment of the receiver showed

| | |
|---|---|
| AMCAP PETROLEUM ASSOCIATES | AMERICAN HAWK OIL COMPANY |
| AMERICAN FALCON OIL COMPANY | AMERICAN EAGLE OIL COMPANY |
| AMERICAN HERON OIL COMPANY | AMERICAN WREN OIL COMPANY |
| AMERICAN RAVEN OIL COMPANY | HARPER OIL COMPANY |

---

**2.** We note that the bond of the initial applicants was carried forward and no additional bond was executed.

that Humble and the applicants held the working interests, in various proportions, in 151 wells and that Humble was the named operator in as many as nine identical (except for property description and fractional ownership interests) operating agreements. Humble was accused, by the single witness permitted to testify, of failing to operate the wells in a "good and workmanlike manner" (no breach of the operating agreement's more specific terms was shown) because Humble had shut-in the producing wells after receiving the applicants' written notice that: "[E]ffective immediately, your authority, if any, to purchase and/or sell the share of crude oil from those wells attributable to the undersigned is revoked." The evidence also showed that the working interest owners, had voted to remove Humble as operator, as provided in the operating agreements, but such removal was to become effective 90 days thereafter.

■ The trial court was not requested to, nor did it, file its findings under Rule 296 Tex.R.Civ.P.Ann. (1982). In an appeal from interlocutory orders the trial court may, but is not required to, make such findings. *Southwestern Newspapers Corp. v. Curtis,* 584 S.W.2d 362, 366 (Tex.Civ.App.—Amarillo 1979, no writ). However, where findings are set out in the order itself, they may be treated as findings under Rule 296. *Cottle v. Knapper,* 571 S.W.2d 59, 64 (Tex.Civ.App.—Tyler 1978, no writ). The trial court's order appointing the receiver contains four pages, single spaced, of narrative-style findings. The significant findings are:

1. ... "that Humble has unilaterally, without cause, without authorization from Plaintiffs and in an illegal manner "shut in" substantially all of the oil and gas wells in which the Plaintiffs have an interest which are operated by Humble, ceasing any further production therefrom."

2. ... "that such precipitant, unauthorized (sic), and illegal acts have severely injured Plaintiffs and others because "shutting in" such wells will in all probability cause permanent and irreparable physical damage to the formations from which the wells are producing and may prevent some of the wells from being restored to full production."

3. ... that "all parties, ... will be irreparably harmed ... in that the longer the oil and gas wells remain shut in, the more likely it is that such damage and/or impaired production will result, and because the longer the wells remain shut in, the greater the loss of production rights under the terms of the leases presently held by the production."

4. ... that "such oil and gas wells will in all probability be subject to drainage the longer they remain shut in."

5. ... that "Humble's actions in shutting in the wells have deprived Plaintiffs of their clear contract rights to receive the production of oil and gas in kind and the proceeds from such production."

6. ... "that Humble has in many respects breached its duties as Operator and failed to operate the wells in a good and workmanlike manner."

7. ... "that the apointment (sic) of a Receiver is required in order to get the oil and gas wells in production and preserve such assets."

8. ... that "all of the capital, bank accounts, assets, staff, employees, records, lease files, payable files, financial and accounting records, reporting files, Railroad Commission files, litigation files, lease files, and all other documents, files, equipment and materials of Humble are necessary and indispensable to a Receiver's ability to manage, control and operate the oil and gas wells."

Our initial issue on appeal is whether the appointment of the receiver shall be tested under Articles 2293–2320c Tex.Rev.Civ.Stat. Ann. (Vernon 1971 & Supp.1981) or under Articles 7.04–7.08, Tex.Bus.Corp.Act Ann. (Vernon 1980 & Supp.1982). Humble urges that Articles 2293–2320c are inapplicable to corporations because such statutes are

"general" in nature and must be disregarded since the Legislature subsequently passed the more specific Texas Business Corporation Act, which included the receivership of corporations, and is found in the Act as articles 7.04–7.08. Fairway insists that it is entitled to rely on both statutes as they are of equal dignity. The positions taken by the parties in the applicable statutes anticipate their arguments on the merits of the appeal. If the receivership is to be tested under Articles 2293–2320c, proof alone of the statutory facts compel the appointment of a receiver without regard to whether a lesser equitable relief might adequately serve the circumstances or whether there was an adequate legal remedy. *See Hughes v. Marshall Nat. Bank,* 538 S.W.2d 820, 823–824 (Tex.Civ.App.—Tyler 1976, writ dsmd.). To the contrary, if the receivership is to be tested under Articles 7.04–7.08 of the Texas Business Corporation Act, a receiver may be appointed on appropriate facts, but only:

> "if all other remedies available either at law or in equity, including the appointment of a receiver for specific assets of the corporation, are determined by the court to be inadequate."

Tex.Bus.Corp.Act Ann. art. 7.05(A) (Vernon 1980). The trial court's order appointing the receiver directed the receiver to take possession of Humble,

> "including all its operations, *business,* affairs, properties, files, records, bank accounts, employees, facilities, real and personal property interests, *assets,* liabilities, and any and all of its properties." [emphasis added]

which is consistent only with the extent of receivership authorized by Article 7.05(A). Article 7.05(A) provides in pertinent part:

> "a receiver may be appointed for the *assets* and *business* of a corporation by the district court for the county in which the registered office of the corporation is located, whenever circumstances exists deemed by the court to require the appointment of a receiver to conserve the *assets* and *business* of the corporation ..." [emphasis added]

To the contrary, Articles 2293–2320c (and even Article 7.04 of the Tex.Bus.Corp.Act) are specifically limited to the appointment of a receiver of "property or fund jointly owned." *See* Tex.Rev.Civ.Stat.Ann. art. 2293(1) (Vernon 1981); Tex.Bus.Corp.Act Ann. art. 7.04(A)(1) (Vernon 1980).

■ Consequently, the trial court's order appointing a receiver of Humble and its "assets and business" was necessarily an appointment relying upon Article 7.05 and requires that we employ Article 7.05 in testing the propriety of the appointment. Our conclusion is supported by *King Commodity Co. of Tex., Inc. v. State,* 508 S.W.2d 439, 444–447 (Tex.Civ.App.—Dallas 1974, no writ) in which we held that the Business Corporation Act was not limited to corporate receiverships of specific assets; or to corporate receivership for dissolution purposes; but, applied to every corporate receivership of the "assets and business" of the corporation to the exclusion of Articles 2293–2320c. We conclude and hold that receivership of Humble and its "assets and business" must be supported by evidence of each element and condition set out in Article 7.05.

In order to justify a receiver of a corporation, its assets and business under Article 7.05(A), the evidence must show:

(a) circumstances requiring a receiver to conserve such assets and business;

(b) but, *only* if all other requirements of law are met;

(c) but, also, *only* if all other remedies, at law or equity, including a receiver of specific assets, are inadequate;

(d) but, also again, *only* in these instances;

(1) In an action by a shareholder (inapplicable here) or;

(2) In an action by a creditor when it is established:

(a) That the corporation is insolvent and the claim of the creditor has been reduced to judgment and an execution thereon returned unsatisfied; or

(b) That the corporation is insolvent and the corporation has admitted in writing that the claim of the creditor is due and owing.

(3) In any other actions where receivers have heretofore been appointed by the usages of the court of equity. [emphasis supplied]

See Tex.Bus.Corp.Act Ann. art. 7.05(A)(2) and (3) (Vernon 1980).

Humble urges that the applicants failed to show that their action was one in which a receivership could be granted under Article 7.05(A) because there was no proof that the applicant's action was "by a shareholder," or "by a creditor" or "other action" where a receiver had heretofore been appointed by the usages of equity. The applicants respond, admitting they were not shareholders, but claiming to be creditors, because Humble as operator, had sold some production before the shut-in of the wells and not all of such production had been accounted for and paid. Our examination of the record shows that such a claim was pleaded but we do not find proof of such claim; consequently, we sustain this argument of Humble.

Humble alternatively submits that the applicants, even if they were creditors, failed to show that their claims were either reduced to judgment or admitted in writing as required by Article 7.05(A)(2)(a) and (b). The applicants fail to respond to this argument and our examination of the record reflects neither a judgment against Humble in favor of the applicants nor Humble's admission in writing that the applicant's claims are due and owing. We sustain this argument of Humble.

Humble additionally urges that the applicants failed to show that Humble was insolvent as required by Article 7.05(A)(2)(a) and (b). The applicants fail to answer this argument and our examination of the record reflects no evidence showing that Humble is insolvent. We sustain this argument of Humble.

■ Humble further urges that the applicants failed to show that their action was one in which receivers had heretofore been appointed by the "usages of equity" as permitted by Article 7.05(A)(3). The applicants respond first that their evidence reflected immediate danger to the commonly owned property, the shut-in wells. Assuming the adequacy of the applicants showing of danger to the shut-in wells, a receiver by the "usages of equity" would only be justified of the shut-in wells alone, that is, "specific corporate assets." We hold that mere proof of a need to conserve specific corporate assets (the applicant's proof here) does not justify a receiver of the entire corporation, its assets and its business, as a "usage of equity." To conserve specific assets by a receivership of the whole corporation would, in fact, defeat equity. In so holding, we adhere to this court's conclusion in Texas Consld. Oils v. Hartwell, 240 S.W.2d 324 (Tex.Civ.App.—Dallas 1951, mand. overr.) that:

> Conservation of the assets through receivership is ofttimes a myth—a total destruction of the corporate assets. No more radical remedy could be devised which would discredit, cripple and, in the majority of instances, put to an end any business or enterprise.

Id. at 327. We sustain this argument of Humble.

Humble lastly argues as well that, even if the applicants' proof had been met by every other criteria provided by Article 7.05(A), the receivership should have been denied because the applicants failed to show that "all other remedies available at law or equity, including the appointment of a receiver for specific assets" were inadequate. The applicants respond that they needed the entire Humble corporation to open and to operate the shut-in wells, and that the trial court's order so found. We have examined the record and fail to find any evidence that supports a "need" to conserve the rights of the applicants beyond the wells themselves, together with their fixtures and attachments which heretofore served to obtain their production. We hold that since a receiver of the specific assets of Humble (wells and well equipment) would have adequately protected the applicants' rights, a receiver of all the "assets and business" of Humble was contrary to Article 7.05(A). We sustain this argument of Humble.

Because of the foregoing errors reflected in this record, we hold that the "receiver was improvidently appointed; the order of the trial court appointing the receiver is set aside, and the receivership is vacated," as this court also ordered in *Supervend Corp. v. Jones,* 235 S.W.2d 707, 710 (Tex.Civ.App.—Dallas 1950, no writ). Costs in this court and in the trial court are assessed to the applicants who executed the applicants' bond for the appointment of a receiver of Humble. Since we vacate the appointment of the receiver, the injunction requiring submission to the receiver is without object; consequently, the injunction is likewise vacated.

Subsequent to the perfection of its interlocutory appeal on June 1, 1982, Humble was subjected to a second order of the trial court, entered June 16, 1982, which re-appointed a receiver over the entire corporation and carried forward the bond executed by the initial applicants. Humble sought relief in this court urging that the second order appointing a receiver of Humble, its assets and its business, was made and entered after the trial court lost jurisdiction by the perfection of Humble's appeal. We agree upon the authority of *Parsons v. Galveston Cty. Empl. Credit Union,* 576 S.W.2d 99, 100 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). In *Parsons,* the trial court held that a statute giving the State's Credit Commissioner supervisory jurisdiction over credit unions was unconstitutional and mandatorily enjoined the commissioner to restore to the credit union its assets and its business taken by the commissioner in reliance on such unconstitutional statute. After the commissioner perfected his appeal, the trial judge entered a second order supplementing and amending his prior order (upon which appeal had been perfected) so as to place supervision (a receivership by nature) over operations of the credit union in the trial court. Under circumstances which were thus substantially identical with our case, *Parsons* ruled:

> Unfortunately, it (the second order) came too late. The perfection of an appeal from an order granting a temporary injunction terminates the jurisdiction of the trial court insofar as the temporary injunction is concerned. 4 Tex.Jur.2d Rev. Part 1, 168, Appeal & Error—Civil Cases § 323, citing *Caldwell v. Meyers,* 446 S.W.2d 709 (Tex.Civ.App.1969, no writ). An amended temporary injunction entered after appeal has been perfected will be stricken. *City of Corpus Christi v. Lone Star Fish and Oyster Co.,* 335 S.W.2d 621 (Tex.Civ.App.1960, no writ).

*Parsons, supra* at 100. We find no reason to distinguish *Parsons* from our case or to apply any different remedy. The applicants urge that in *Charton Corp. v. Brockette,* 534 S.W.2d 401, 404 (Tex.Civ.App.—Corpus Christi 1976 writ ref'd n.r.e.), it was held that the trial court retained jurisdiction of a receivership despite appeal; however, as we read *Charton,* the holding was only that a trial court retained jurisdiction to direct the day-to-day conservation of assets in the hands of its receiver during an appeal. In our case, and in *Parsons,* the orders of the trial court, after perfection of the appeal, were directed at the very subject of the appeal, the receiver's appointment, and not to mere conservation of assets. We hold that the trial court lost jurisdiction of the issue of the *appointment* of a receiver, the subject of this appeal, on June 1, 1982, when this appeal was perfected. Consequently, its second order of June 16, 1982, will be stricken as void, insofar as such order includes Humble, its assets and its business. Additional costs in the trial court associated with the hearing for, and the trial court's order of, June 16, 1982, and not appearing on the cost bill presently certified to this court, shall not be assessed by the trial court, in part or in whole, to Humble.

Accordingly, the trial court's orders of May 28 and June 16, 1982, appointing a receiver of Humble are vacated. All costs in the trial court and this court are assessed to those applicants executing the applicants' bond.

Reversed and vacated.

## ON MOTION FOR REHEARING

TED Z. ROBERTSON, Justice, dissenting.

I respectfully dissent. I would grant the appellee's motion for rehearing and affirm the appointment of a receiver.

The record reflects that on May 28, the trial court made all of the determinations required by article 7.05 of the Business Corporation Act. The trial court was required to find, and did find: (1) that all other requirements of law were complied with by the petitioner; (2) that all other remedies available at law or in equity were inadequate; and (3) that this was an action where receiver had heretofore been appointed by usages of the court of equity. Although this court may conclude that the appointment of a receiver was improvident, we are not authorized to overturn the decision of the trial court on appeal absent a clear abuse of discretion. I find no abuse of discretion in light of the emergency of this proceeding. *Collegiate Recovery & Credit Assistance Programs, Inc. v. State,* 525 S.W.2d 900, 901 (Tex.Civ.App.—Waco 1975, no writ). In the event that the May 28 order was improperly entered, I am of the opinion that the June 16 order should stand.

In the absence of a supersedeas bond, the district court retained authority to modify or change its order appointing a receiver pending the appeal. *See Shell Petroleum Corp. v. Grays,* 122 Tex. 491, 62 S.W.2d 113, 117–18 (Tex.Comm'n App.1933, opinion adopted) (appellant entitled to supersede trial court's order appointing a receiver when the appeal is from such an appointment). The trial court's order of June 16 had the effect of rendering moot the issues presented by the appeal of the May 28 order appointing a receiver. *Tharp v. Lammons,* 520 S.W.2d 951, 951–52 (Tex.Civ.App.—Dallas 1975, no writ) (in the absence of a supersedeas bond, the trial court retains jurisdiction to vacate the order appointing a receiver). *See also Charton Corp. v. Brockette,* 534 S.W.2d 401, 404 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Humble has not perfected an appeal from the order of June 16. Consequently, this court is without authority to vacate that order.

Therefore, the relief requested by Humble should in all things be denied.