Sugg v. ANBG 






NO. 10-90-198-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          DELBERT SUGG AND DELBERT SUGG
          CATTLE CO., INC.,
                                                                                            Appellant
          v.

          AMERICAN NATIONAL BANK OF GONZALES,
                                                                                            Appellee

* * * * * * * * * * * * *

 From 220th Judicial District Court 
Bosque County, Texas
Trial Court # 90-01-19190-BCCV

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
          Delbert Sugg and Delbert Sugg Cattle Co., Inc. appeal from an ex parte order appointing
a receiver. American National Bank of Gonzales applied for the receivership after it sued them
in Gonzales County to collect delinquent notes and overdrafts. In points of error one through
four, Sugg and the cattle company allege that the court erred in appointing a receiver, and in point
five they complain about the amount of the receiver's bond. We will vacate the receiver's
appointment as to the cattle company because the application failed to support the existence of the
specific statutory grounds required by article 7.05 of the Texas Business Corporation Act and
because the appointment was inconsistent with the usages of equity. Additionally, we will vacate
the appointment as to Sugg and the cattle company because the bank failed to show any emergency
which warranted an immediate appointment without notice and hearing.
          Sugg and the cattle company assert in point one that the court erred in appointing a receiver
for the cattle company because the application did not meet the requirements of section 64.001 of
the Texas Civil Practice and Remedies Code or of articles 7.04, 7.05 or 7.06 of the Texas
Business Corporation Act. See Tex. Civ. Prac. & Rem. Code Ann. § 64.001 (Vernon 1986);
Tex. Bus. Corp. Act Ann. arts 7.04, 7.05, 7.06 (Vernon 1980). Although the bank sought the
receivership under the Civil Practice and Remedies Code, we believe that the court's order was
consistent only with the extent of a receivership authorized by article 7.05 of the Texas Business
Corporation Act. See Tex. Bus. Corp. Act. Ann. art. 7.05 (Vernon 1980); Humble Exploration
Co. v. Fairway Land Co., 641 S.W.2d 934, 938 (Tex. App.--Dallas 1982, writ ref'd n.r.e.). The
order, which authorized the receiver to do any and all acts necessary to the proper and lawful
conduct of receivership, enumerated fourteen actions the receiver could take, including the rights: 
To take possession of and secure all cattle, livestock, contracts, notes, drafts, and
monies representing proceeds thereof which are in possession or control of
Defendants, or either of them;
To collect all accounts receivable, drafts, contract rights, or other monies owing
to Defendants, or either of them, from any person whatsoever; 
To take possession of Defendants' mail box keys and/or forward Defendants' mail
to another mail box for the purpose of intercepting payments and documents in
accordance herewith; 
To answer Defendants' office telephones to the exclusion of Defendants; 
To exclude Defendants from their business office; and if the receiver deems
necessary, change the locks on such office to secure same; 
To hire such hands, cowboys, truckers, veterinarians, bookkeepers, typists,
attorneys and accountants to assist the receiver in performing his duties hereunder,
and to pay them from Defendants' property; 
          The bank argues that the receivership was proper under article 7.04 of the Texas Business
Corporation Act which allows the appointment of a receiver for specific corporate assets. See 
Tex. Bus. Corp. Act Ann. art. 7.04 (Vernon 1980). It denies, however, that the appointment
was made over the cattle company's assets and business, asserting that the order merely authorized
the receiver "to take possession" of the property but not to "operate the business." By excluding
the cattle company from answering its telephone, receiving its mail, and entering its business
office, the order effectively gave the receiver control of the cattle company's business. The bank's
contention that the order did not grant a receivership over the cattle company's business because
it did not specifically authorize the receiver to "operate the business" ignores the reality that this
order was more onerous to the cattle company than one directing the receiver to operate the
business. This order effectively prevented the cattle company from conducting any operations. 
No one, not even the receiver, could conduct any business on behalf of the cattle company. 
Article 7.04 does not provide for a receivership that causes business operations to cease; it merely
provides for a receivership over "specific corporate assets." Id. Because the court effectively
appointed a receiver over the cattle company's assets and business, each and every element and
condition in article 7.05 had to be satisfied. See Humble, 641 S.W.2d at 939. 
          In Humble, the court summarizes the requirements of article 7.05 as follows:
          [T]he evidence must show:
(a) circumstances requiring a receiver to conserve such assets and business;
(b) but, only, if all other requirements of law are met;
(c) but, also, only if all other remedies, at law or equity, including a receiver of
specific assets, are inadequate;
(d) but, also again, only in these instances;
(1) In an action by a shareholder (inapplicable here) or;
(2) In an action by a creditor when it is established:
(a) That the corporation is insolvent and the claim of the creditor
has been reduced to judgment and an execution thereon returned
unsatisfied; or
(b) That the corporation is insolvent and the corporation has admitted in
writing that the claim of the creditor is due and owing.
(3) In any other actions where receivers have heretofore been appointed by the
usages of the court of equity. (Emphasis supplied).
Id.
          The order was granted ex parte, so the only facts in the record for our review are those in
the application and the order. Nowhere in the application does the bank show that its claims were
either reduced to judgment or admitted in writing. See Tex. Bus. Corp. Act Ann. art.
7.05(A)(2)(a), (b) (Vernon 1980). Nor does the bank allege or factually show the inadequacy of
all other legal or equitable remedies. See id. at 7.05(A). Additionally, this was not a situation
in which receivers had "heretofore been appointed by the usages of the court of equity." See id.
at 7.05(A)(3). As the court in Humble held, "[m]ere proof of a need to conserve specific
corporate assets . . . does not justify a receiver of the entire corporation, its assets and its
business, as a `usage of equity.' To conserve specific assets by a receivership of the whole
corporation would, in fact, defeat equity." Humble, 641 S.W.2d at 939. The court then quoted
the holding in Texas Consolidated Oils v. Hartwell that:
Conservation of the assets through receivership is ofttimes a myth--a total
destruction of the corporate assets. No more radical remedy could be devised
which would discredit, cripple and, in the majority of instances, put to an end any
business or enterprise.

Texas Consolidated Oils v. Hartwell, 240 S.W.2d 324, 327 (Tex. Civ. App.--Dallas 1951, orig.
proceeding [leave denied]).   The bank maintains that the appointment of a receiver lies within the
sound discretion of the trial court and that we should not disturb this appointment without a
showing of a clear abuse of discretion. See Collegiate Recovery & Credit, etc. v. State, 525
S.W.2d 900, 901 (Tex. App.--Waco 1975, no writ). Because all of the conditions of article 7.05
were not satisfied, we hold that the court abused its discretion in appointing a receiver over the
cattle company's assets and business and sustain point one. See Tex. Bus. Corp. Act. Ann. art.
7.05 (Vernon 1980).  
          By point four, Sugg and the cattle company complain that the court erred in entering the
order ex parte because the bank failed to show any emergency which warranted an immediate
appointment of a receiver without notice or a hearing. The appointment of a receiver is "one of
the most drastic actions known to law or equity and should be exercised with extreme caution and
only where great emergency or imperative necessity requires it." Best Investment Co. v. Whirley,
536 S.W.2d 578, 581 (Tex. App.--Dallas 1976, no writ). The application for an ex parte
receivership must be verified and contain specific facts, as distinguished from mere conclusions,
regarding the necessity of the appointment without notice. Morris v. North Fort Worth State Bank,
300 S.W.2d 314, 315 (Tex. Civ. App.--Fort Worth 1957, no writ). The appointment should not
be made without notice unless the applicant shows that he will suffer some material injury by the
delay necessary to give notice. Id. 
          The bank's application, although verified, merely provided: "Plaintiff believes that
Defendants will conceal or dispose of Plaintiff's collateral unless the receiver is granted." This
statement was a conclusion, unsupported by specific facts, and, more importantly, failed to
indicate what injury would be incurred by the "delay necessary to give notice." The bank does
not even suggest that Sugg and the cattle company might conceal or dispose of its collateral during
the time necessary to hold a hearing on the application. Therefore, because there was no showing
in the application of an immediate and pressing necessity for appointment of a receiver without
notice, we sustain point four. See id. 
          Because we have sustained points one and four and agree that the order was improper as
to both Sugg and the cattle company we do not reach their remaining points. The receivership
order is reversed, the appointment of a receiver is vacated and the cause is remanded to the trial
court for further proceedings. 
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas
          Justice Cummings and
          Justice Vance
Reversed and remanded
Opinion delivered and filed March 28, 1991
Do not publish



 serif">                                                                                 Justice
Before Chief Justice Thomas
          Justice Cummings and 
          Justice Vance
Reversed and remanded (Chief Justice Thomas dissenting)
Opinion delivered and filed June 13, 1991
Publish